ELK RIVER FORD, INC., Respondent,

v.

Mark Garrett HOECHERL, Appellant.

No. C5-88-349.

Court of Appeals of Minnesota.

Sept. 13, 1988.

Arthur W. LaChapelle, St. Paul, for respondent.

Raymond W. Faricy, Jr., Timothy W.J. Dunn, Faricy & Dunn, St. Paul, for appellant.

Heard, considered and decided by LANSING, P.J., and LOMMEN and SCHULTZ,* JJ

## OPINION

A. PAUL LOMMEN, Judge.

Appellant went into default on a loan for the purchase of a pickup truck. After repossession, respondent resold the truck, and sued appellant for a deficiency. Respondent contends, and the trial court agreed, that an overallowance or overvalue given on a trade-in for the resale of the truck was a commercially reasonable part of reselling the repossessed collateral. We affirm.

## FACTS

The facts in this matter are not in dispute. In lieu of trial, the parties submitted the matter to the trial judge on stipulated facts and memoranda.

On May 22, 1981, appellant Mark Hoecherl purchased a 1981 Ford pickup truck for $9,431.36, mostly on credit. When appellant went into default, the truck was repossessed on October 23, 1981, with appellant still owing a balance of $7,273.21. On January 8, 1982, the truck was resold for $8,200. The net resale price (gross minus trade-in) was $6,550. Respondent Elk River Ford sued appellant for the deficiency. The trial court measured the difference between respondent's net resale price and the amount appellant had owed on the note at the time of default, added attorney fees and the reasonable costs of preparation and resale and entered a deficiency judgment against appellant for $1,158.34.

Appellant's contention is that the trial court erroneously considered an overallowance, made by respondent in valuing a trade-in on the second sale. The second purchasers had traded in a 1976 Chevrolet. The parties agreed that of the trade-in value of $2,650 allowed by respondent, $1,000 consisted of the truck's actual cash value and $1,650 consisted of an overallowance. The following chart highlights the transactions:

| | | | | |
|---|---|---|---|---|
| Gross Resale | $8,200.00 | | Balance at Default | $7,273.21 |
| — Trade In | 2,650.00 | | — Net Resale | 6,550.00 |
| Net Resale | $6,550.00 | | Deficiency | $ 723.21 |
| Deficiency | $ 723.21 | | Actual Value of Trade In | $1,000.00 |
| + Reasonable Cost of Prep. & Sale | 284.04 | | | |
| + Attorney Fees | 151.09 | | + Overallowance | $1,650.00 |
| Total Deficiency | $1,158.34 | | Trade In | $2,650.00 |

## ISSUE

May a secured party, after default, include as the reasonable part of reselling collateral, an overallowance or overvalue of a trade-in?

## ANALYSIS

Where the facts are stipulated, the trial court's conclusions of law are not binding. *See Madden v. Home Insurance Co.*, 367 N.W.2d 676 (Minn.Ct.App.1985).

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Minn.Stat. § 336.9–504 (1986) allows a secured party to dispose of repossessed collateral after the default of the debtor. The statute allows the secured party significant leeway in disposing of the repossessed collateral, but requires that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." Minn. Stat. § 336.9–504(3). After resale, the secured party must account to the debtor for any surplus gained or may look to the debtor for any deficiency. Minn.Stat. § 336.9–504(2). Essentially, appellant claims that use of an overallowance, specifically in the resale of repossessed collateral leading to a deficiency, is not commercially reasonable.

No Minnesota case has directly considered this issue. There are however, two cases from other states which address this issue. In *Don Jenkins & Son Ford–Mercury, Inc. v. Catlette,* 59 N.C.App. 482, 297 S.E.2d 409 (1982) the North Carolina Court of Appeals permitted a deficiency action where part of the deficiency amount was created by a trade-in adjustment/overallowance. The trial court allowed the overallowance as commercially reasonable under section 336.9–504(3).

A second case, *Thrower v. Union Lincoln–Mercury, Inc.,* 282 Ark. 585, 670 S.W. 2d 430 (1984) also considered this question. In *Thrower,* the Arkansas Supreme Court noted:

> The over-allowance, as it is termed, is not a distinctly separate expense * * * or merely incidental to doing business, rather it is an integral part of the bargain and sale of the collateral. The dealer, when selling the repossessed car at what it determines is a marketable price, takes into consideration the buying or bargaining preferences of any individual purchaser in order to make the sale more attractive. The dealer could simply choose to reduce the asking price or grant an over-allowance as was done here.

*Thrower,* 670 S.W.2d at 431.

In cases concerning commercial reasonableness in the sale of repossessed collateral, the burden of proof is on the secure party to demonstrate commercial reasonableness. *Fedders Corp. v. Taylor,* 473 F.Supp. 961 (D.Minn.1979). Respondent argues that the overallowance used in the current transaction is in conformity with reasonable commercial practices among automobile dealers nationwide. Essentially, the overallowance is a tool used by dealers to facilitate the sale of automobiles. When a prospective purchaser is offered a trade-in allowance of more than the value of the car, sales are increased. The dealer then makes up for his generosity by charging more for the car being sold. Appellant suggests that this process opens a way for abuse of defaulting parties. However, a deficiency judgment is never a sure thing. Collection costs are high and often the debtor is unable to pay. It makes more sense for the dealer to earn his profit on a resale, rather than making it up through a deficiency judgment. This means the dealer has an incentive to sell the repossessed vehicle for as high as the market will bear, rather than counting on receipts or profits from the debtor through a deficiency judgment. The trial court is affirmed.

### DECISION

AFFIRMED.