[No. 16475–9–I.   Division One.   March 2, 1987.]

ROBERT H. ROTTA, ET AL, *Respondents,* v. EARLY INDUSTRIAL CORPORATION, ET AL, *Appellants.*

*David A. Peters, David W. Christel,* and *Diamond & Sylvester,* for appellants.

*Albert Hanan,* for respondents.

DORE, J.*—This appeal arises from an action to recover payment of promissory notes made in connection with the sale of stock certificates and assets of a business. We hold that a creditor may not recover a deficiency judgment against a debtor when the creditor sold collateral without due notice to the debtor. We also decide that the Rotta sale was not conducted in a commercially reasonable manner.

Therefore we reverse.

## FACTS

Rotta, et al, a group of investors, owned Rotta Sheet Metal Works, Inc. In October 1979 Rotta sold the capital stock and assets to Early Industrial Corporation for $475,000. Early Industrial made a down payment of $95,000, and signed promissory notes for the remainder of the purchase price. Oliver M. Bell and Richard Francisco, two principals of Early Industrial, also signed such notes and added: "We, the undersigned, promise to pay this note according to its terms."

Early Industrial executed two security agreements in connection with the sale. The first, a U.C.C. Form 1A, covered certain items of equipment; a corresponding Form U.C.C.–1 financing statement was later filed. The second was a document entitled "Security Agreement on Sale of Stock of Rotta Sheet Metal Works, Inc.", which pledged

---

*This appeal was heard by a Supreme Court Justice, a retired Supreme Court Justice, and a Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

the stock itself. In event of default, this agreement gave Rotta the right to "take possession of the property, together with all additions, equipment, and accessories . . . without notice or demand, and without legal proceedings." Plaintiff's exhibit 44(J)(8)(b). Rotta did not file a financing statement in connection with this second agreement.

Early Industrial, Bell and Francisco later defaulted. In December 1983, after notice of default by Rotta, Early Industrial surrendered possession of the premises, leaving numerous items, of which only some were covered by the U.C.C.–1 financing statement. In May 1984, Rotta notified Early Industrial that the "personal property listed in that certain financing statement securing your promissory note" would be sold for $80,000. Rotta admits that the financing statement referred to in the notice was the U.C.C.–1 statement, which listed only a limited number of items of equipment.

Rotta sold the listed equipment to CPI Industries. It also sold all the remaining assets, such as vehicles, inventory, raw materials, partially completed projects, supplies, tools and accounts receivable, whether or not listed in the statement. Rotta did not submit an accounting to Early Industrial after the repossession and sale, and it did not learn until a week before trial that Rotta had sold all the business assets. During trial Early Industrial learned that the total sale price was $100,000, and that Rotta had deducted $20,000 to cover expenses and attorney's fees connected with the sale. Rotta credited $80,000 against the balance due on the notes, and sought a deficiency judgment to recover the balance.

Rotta presented no evidence that the sale of collateral was done in a commercially reasonable manner, or that the sale price equaled its fair market value. The focus of the evidence was the issue of the personal liability of Bell and Francisco. The trial court found in favor of Rotta for the balance due on the notes, plus attorney's fees and costs. Early Industrial preserved the issues of insufficient notice and commercial unreasonableness of the sale by raising

them in closing argument and in its motion for reconsideration. *See Newcomer v. Masini*, 45 Wn. App. 284, 287, 724 P.2d 1122 (1986). The court denied that motion, and Early Industrial now appeals.

## LACK OF NOTICE OF SALE OF COLLATERAL

Upon repossession of collateral by a creditor, RCW 62A.9–504 requires "reasonable notification [to the debtor] of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition [of the collateral] is to be made . . ." RCW 62A.9–504(3). Failure to give such notice entitles the debtor to damages under RCW 62A.9–507(1). *Grant Cy. Tractor Co. v. Nuss*, 6 Wn. App. 866, 869–70, 496 P.2d 966 (1972).

Rotta provided reasonable notice as to the collateral listed in the U.C.C.–1 financing statement. It gave no notice, however, regarding the sale of the other assets. Those assets served as collateral for the unrecorded security agreement, and are subject to the provisions of the Uniform Commercial Code. RCW 62A.9–102(1)(a).[1] Therefore, notice of the sale of those assets was defective, entitling Early Industrial to damages under RCW 62A.9–507(1).

## COMMERCIAL UNREASONABLENESS OF SALE

■ RCW 62A.9–504(3) provides that "every aspect of the disposition [of collateral] including the method, manner, time, place and terms must be commercially reasonable." The creditor is required to use its best efforts to sell the collateral for the highest price. *Foster v. Knutson*, 84 Wn.2d 538, 549, 527 P.2d 1108 (1974). The burden of proving commercial reasonableness is on the creditor, who is in the better position to know and control the nature of resale, and is the one asserting the deficiency judgment. *Timms v.*

---

[1] Rotta, somewhat disingenuously, argues that those assets are not covered by the Uniform Commercial Code, and therefore the sale subjects them to liability under some other body of law, such as conversion. It misconstrues the Uniform Commercial Code as covering only perfected security agreements.

*James,* 28 Wn. App. 76, 79, 80, 621 P.2d 798 (1980).

The court may consider several factors to determine whether there is a showing of commercial reasonableness, including the sufficiency of the notice of the sale to a sufficiently wide public. *Foster,* at 549. The Washington Supreme Court stated in *Foster*:

> The sale is valid where notice of the sale is (1) given to the defaulted debtor and to the public sufficiently in advance to allow interested bidders a reasonable opportunity to participate, (2) given to a "public" reasonably expected to have an interest in the collateral to be sold and notifying the public of the exact time of sale and place of sale, reasonably convenient to potential bidders, (3) sufficiently replete with information describing the collateral to be sold and the amount of the obligation for which it is being sold to allow potential bidders a genuine opportunity to make an informed judgment as to whether to bid at the sale, and (4) published in a manner reasonably calculated to assure such publicity that the collateral will bring the best possible price from the competitive bidding of a strived-for lively concourse of bidders.

*Foster,* at 549. Other factors may include the relationship of the price obtained to the recognized market price, if any; conformity of the sale to commercially accepted standards; presence or absence of a recognized market and its utilization in the sale; and the overall reasonableness of means and methods of disposition under the circumstances. *Swanson v. May,* 40 Wn. App. 148, 155, 697 P.2d 1013 (1985); *Mount Vernon Dodge, Inc. v. Seattle–First Nat'l Bank,* 18 Wn. App. 569, 585–86, 570 P.2d 702 (1977).

Here, Rotta failed to sustain its burden of showing a commercially reasonable sale. There is no evidence in the record that Rotta made any efforts to reach segments of the public reasonably expected to have an interest in bidding. In fact it is undisputed that it negotiated with only one party, the buyer. There is no evidence that Rotta engaged in any analysis to determine a fair market price or that it sought to conform the sale to commercially accepted standards.

We hold that the sale of the subject collateral was not conducted in a commercially reasonable manner, and that the sale notice was defective.

### DEFICIENCY JUDGMENT

In Washington, a failure to comply with the Uniform Commercial Code requirements regarding sale of collateral will not result in an absolute waiver of a deficiency judgment. *See Nuss,* 6 Wn. App. at 870. Instead, RCW 62A.9–507(1) allows a debtor to recover his or her losses by setoff against the deficiency judgment. *See Nuss,* 6 Wn. App. at 869–70. This is a case of first impression on the issue of whether the debtor or creditor bears the burden of proving damages caused by the creditor's failure to comply with the Uniform Commercial Code requirements.

A federal district court considered this issue in *United States v. Cawley,* 464 F. Supp. 189 (E.D. Wash. 1979). In *Cawley,* the Small Business Administration had caused an auction company to sell collateral securing an SBA loan without giving notice to the debtor. *Cawley,* at 190–91. There was no advertisement of the sale, and there was very little effort by the auction company to locate potential purchasers of the collateral. *Cawley,* at 191. The *Cawley* court held that, under Washington law, a creditor who gives no notice and disposes of collateral in a commercially unreasonable manner faces a rebuttable presumption that the value of the collateral at least equals the amount of the outstanding debt. *Cawley,* at 191–92. The *Cawley* court followed the analysis of the Alaska Supreme Court:

> We hold that the commercially unreasonable sale made by [the secured creditor] acts to decrease the amount of the deficiency judgment which [the creditor] is entitled to recover from [the debtor]. The fair and reasonable value of the collateral at the time of repossession should be offset against the balance due on the security agreement. Where the collateral has been sold in a sale that does not comply with the provisions of the UCC, there is a rebuttable presumption that the

fair and reasonable value of the collateral is at least equal to the amount of the outstanding debt. In order to overcome that presumption, the secured party has the burden of either (1) obtaining a fair and reasonable appraisal at or near the time of repossession, or (2) producing convincing evidence of the value of the collateral. In order to meet the latter burden, the secured creditor is required to bring forward proof of the condition of the collateral and the usual price of items of like condition.

*Cawley,* at 192, quoting *Kobuk Eng'g & Contracting Servs., Inc. v. Superior Tank & Constr. Co–Alaska, Inc.,* 568 P.2d 1007, 1013–14 (Alaska 1977). *Cawley* is supported by dictum in *Commercial Credit Corp. v. Wollgast,* 11 Wn. App. 117, 521 P.2d 1191 (1974) approving a presumption that collateral is worth the amount of the debt where the sale was not conducted according to Uniform Commercial Code requirements. *Wollgast,* at 123, quoting *Norton v. National Bank of Commerce,* 240 Ark. 143, 398 S.W.2d 538 (1966).

In adopting the *Cawley* standard, we reject the more severe rule adopted by other courts that the failure of notice or to conduct a sale in a commercially reasonable manner is an absolute waiver of a deficiency judgment. *See Cawley,* at 192. Rotta thus faced a rebuttable presumption that the value of the property sold was at least equal to the amount of Early Industrial's indebtedness. It chose not to rebut this presumption.

## CONCLUSION

We hold that (a) Rotta's failure to give notice to Early Industrial of its sale of all the collateral, (b) its sale of collateral in a commercially unreasonable manner, and (c) its failure to rebut the resulting presumption that the value of the collateral equaled the amount of the debt bar a deficiency judgment.

We dismiss Rotta's cause of action with prejudice.

We award Early Industrial reasonable attorney's fees. We remand to the trial court for the purpose of establishing

reasonable trial attorney's fees for Early Industrial. Attorney's fees on appeal were not requested.

FORREST and HOROWITZ, JJ. Pro Tem., concur.

Reconsideration denied April 17, 1987.

Review denied by Supreme Court November 4, 1987.