[No. 22771-8-I.   Division One.   November 13, 1989.]

JAY CAREY, as *Trustee, Plaintiff*, v. LINDA REEVE, ET AL, *Respondents*, BERT O. EWING, JR., *Appellant.*

*Diego P. Gavilanes,* for appellant.

*I. Richard Lassman,* for respondent Reeve.

*Richard B. Johnson,* for respondents McCann.

GROSSE, A.C.J.—The appellant, Bert O. Ewing, Jr., a minor, by and through his guardian ad litem, Dominic L. Bacetich, appeals the granting of an order on summary judgment dismissing his suit against the respondents, Linda Reeve and Joseph and Helen McCann, the mother and grandparents of Jeremy Reeve.

Bert O. Ewing, Jr., (Bert) was burned as the result of an accident in which he and Jeremy Reeve (Jeremy) were playing with matches and cigarettes. Bert's parents Bert R. Ewing and Alice Ewing, brought suit against Linda Reeve for negligent entrustment and supervision, and against the McCanns for negligent supervision.[1] The trial court found "as a matter of law that the doctrine of parental immunity applies to the grandparents HELEN and JOSEPH

---

[1]The accident occurred in 1980. In 1983, Bert R. and Alice Ewing filed an action on their own behalf against Linda Reeve and the McCanns, and others. In 1986, a guardian ad litem for Bert, Jr., was allowed to intervene in the suit on his behalf. Later, the Ewings filed for bankruptcy and the trustee was substituted for them as plaintiff. Upon proper motion, the Ewings' action was dismissed on summary judgment, but no appeal was taken from that dismissal. Therefore, this case is limited to a review of the summary judgment granted to respondents Reeve and McCann dismissing appellant's action against them.

McCANN and the mother LINDA REEVE, and if said doctrine did not apply herein the issue of liability would go to the trier of fact".

On June 9, 1980, Bert and Jeremy, both approximately 4½ years old, were playing with matches and cigarettes when the shirt(s) Bert was wearing ignited. As a result Bert sustained severe burns and injuries. The incident happened in the back or side yard of the Ewing's home. At the time of the accident Bert's mother was inside the house reading or sleeping. That summer Jeremy was spending his days at the home of the McCanns, his maternal grandparents. The McCanns lived across the street from the Ewings. Jeremy's mother, Linda Reeve, worked days and left Jeremy with her parents while she was at work. Joseph McCann, Linda's father and Jeremy's grandfather, is a retired police officer who was forced to retire from the force after he became disabled. At the time of the accident, he was undergoing treatment and taking medication for back problems and pain. He had recently been hospitalized.

Bert and Jeremy played together frequently, however, Jeremy was not permitted to play at Bert's house because of previous incidents involving burns, cigarettes, and alleged beer drinking. The depositions of the two children differ as to who provided the matches. The day of the accident, Jeremy was being cared for by both of his grandparents. Before the accident occurred, he and several neighborhood friends were playing with squirt guns around the McCann home. Mr. McCann showed the children how to fill their squirt guns from the outdoor faucet as opposed to traipsing into the kitchen for refills. Mr. McCann returned inside the house and continued performing light housekeeping chores. At the time of the accident Mrs. McCann, who had previously been working in the yard, was taking a shower. Fifteen to twenty minutes after Mr. McCann showed the children how to refill their water pistols, Jeremy returned to the McCann home and reported that Bert had been burned.

Suit was brought against Linda Reeve and the McCanns. Motions for summary judgment were brought and, after several continuances to allow medical discovery concerning Mr. McCann's health, argument was heard. Respondents' argument centered on the basis that neither Linda Reeve nor the McCanns had engaged in willful or wanton misconduct in the care and supervision of Jeremy. The Ewings and appellant argued theories of negligent supervision and negligent entrustment based on their contention that Jeremy had previously displayed a propensity for acting recklessly with matches and a cigarette lighter, and that neither his mother nor his grandparents exercised proper control under the circumstances. They also argued that Linda Reeve was negligent for allowing her father to care for Jeremy considering the state of his mental and physical health. The trial court granted the motions on summary judgment based on the doctrine of parental immunity covering the parent and the grandparents who were held to be acting in loco parentis.

The liability of a parent or guardian for negligent entrustment and supervision of a minor child depends on whether the child himself has been injured, or whether the child has injured another. If a child has been injured himself as a result of his parent's failure to supervise, the parent cannot be sued for negligent supervision. *Baughn v. Honda Motor Co.*, 105 Wn.2d 118, 119, 712 P.2d 293 (1986); *Jenkins v. Snohomish Cy. PUD 1*, 105 Wn.2d 99, 713 P.2d 79 (1986); *Talarico v. Foremost Ins. Co.*, 105 Wn.2d 114, 712 P.2d 294 (1986). A parent will be liable for his child's injuries only if his failure to properly supervise the child amounts to willful or wanton misconduct.

> Historically, the parental immunity doctrine has been based on the public policy interest in maintaining family tranquility, fear of undermining parental control and authority, an interest in assuring that family property be shared by all rather than appropriated by one family member, fear of collusion and fraud, and a view of the parent–child relationship as analogous to the husband–wife relationship.

*Jenkins v. Snohomish Cy. PUD 1,* 105 Wn.2d at 104. The application of the doctrine of parental immunity, although widespread in the past, has been severely criticized especially in cases such as *Roller v. Roller,* 37 Wash. 242, 79 P. 788 (1905), the first holding using parental immunity in Washington. There the court held that the incestuous rape of a 15–year–old child could not be the subject of a compensation action because to allow such would destroy the family relationship. The Washington Supreme Court has generally found parental immunity for negligent supervision, *Cox v. Hugo,* 52 Wn.2d 815, 329 P.2d 467 (1958), but has recognized exceptions to the doctrine. *Merrick v. Sutterlin,* 93 Wn.2d 411, 610 P.2d 891 (1980) (no parental immunity for child's injuries when injured as a result of parent's negligent driving); *Hoffman v. Tracy,* 67 Wn.2d 31, 406 P.2d 323 (1965) (no parental immunity for child's injuries because parent abdicated responsibility by driving drunk); *Borst v. Borst,* 41 Wn.2d 642, 251 P.2d 149 (1952) (no immunity where parent is acting in business capacity rather than parental).

In contrast to the doctrine of parental immunity, in Washington, parents are liable to third parties for the tortious conduct of a child if they know of the child's dangerous proclivity and fail to take reasonable measures to control that proclivity. *Eldredge v. Kamp Kachess Youth Servs., Inc.,* 90 Wn.2d 402, 408, 583 P.2d 626 (1978); *Norton v. Payne,* 154 Wash. 241, 244–48, 281 P. 991 (1929); Restatement (Second) of Torts § 316 (1965). *See also* Annot., *Parent's Liability for Injury or Damage Intentionally Inflicted by Minor Child,* 54 A.L.R.3d 974 (1973); Shong, *The Legal Responsibility of Parents for Their Children's Delinquency,* 6 Fam. L.Q. 145 (Summer 1972). The Restatement has set forth the theory of liability, commonly referred to as the theory of negligent supervision, as follows:

A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming

others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
(a) knows or has reason to know that he has the ability to control his child, and
(b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 316 (1965).

■ In the case before this court, in dismissing the claims, the trial court found as a matter of law that the doctrine of parental immunity applied. Because this case deals with the liability of a parent (or grandparent) because of a child's alleged action toward a third person, and not toward her child (or their grandchild), the trial court erred in applying the doctrine of parental immunity.[2]

■ Although the trial court granted summary judgment on improper grounds, it does not necessarily follow that the decision must be reversed. As the Supreme Court said in *Ertman v. Olympia*, 95 Wn.2d 105, 108, 621 P.2d 724 (1980): "We have held many times that where a judgment or order is correct, it will not be reversed merely because the trial court gave the wrong reason for its rendition." (Citations omitted.) Further, a trial court's disposition may be affirmed on any theory within the pleadings and the proof. *Timms v. James*, 28 Wn. App. 76, 81, 621 P.2d 798 (1980). Thus the decision may be upheld where there is an alternate ground on which the summary judgment could have been granted.

Thus, the question becomes one of whether there is an unresolved issue of fact regarding the parent's or grandparents' negligence in the supervision of Jeremy. The appellant contends the evidence before the trial court raises material questions of fact concerning whether the McCanns negligently supervised their grandson or whether Jeremy's

---

[2]Although an interesting and cogent argument can be made to extend parental immunity to cases such as this, the doctrine of parental immunity has never been extended to cases where the minor child injures another.

mother was negligent in allowing her parents to supervise Jeremy.[3]

There are many depositions in this case. Both boys were deposed some 4 years after the incident. Jeremy's mother and grandparents were deposed, and Bert's father was deposed. The depositions indicate that Bert had been seen with matches, a lighter, and even smoking; that he had been punished several times for lighting cigarettes, and a couple of weeks before the accident he had burned Jeremy's arm. After that, Jeremy was told he was not allowed to go to the Ewings' house because of Bert's proclivity to play with fire. Bert claims that both the matches and the cigarettes were from the McCanns' house. Jeremy claims that Bert had the matches and that he got the cigarettes. There was an indication in the record that several weeks before this incident, Jeremy had taken his mother's lighter and hidden it in his sleeping bag. For that he was punished by his mother. Mr. Ewing claimed in his deposition that Jeremy had been punished for setting his sleeping bag on fire with the lighter, but that was not corroborated by any other evidence. Mr. McCann drove Mrs. Ewing to the hospital while Mr. Ewing rode in the ambulance with Bert. McCann claimed Mrs. Ewing talked about what she and her husband had done to try to prevent Bert from playing with fire. Jeremy's mother claimed that she had no problems with Jeremy, as far as "fire" was concerned, until Bert moved into the neighborhood. Mr. McCann testified that the kids had been playing with squirt guns and were filling them up outside while he was inside the house dusting books in the bookshelf. He was shocked when he learned that Jeremy had disobeyed him and gone to the Ewings' house. He said that Jeremy had never disobeyed him before.

---

[3]We need not discuss the issue of whether the burning might have been an intentional act by reason of Jeremy's tender age. There is a conclusive presumption that children under 6 years of age cannot form the intent to harm others. *See Von Saxe v. Barnett,* 125 Wash. 639, 217 P. 62 (1923).

■ Recently, this court held that one who voluntarily assumes responsibility for the care of a child has a duty to exercise *reasonable care* to protect that child. *Curran v. Marysville,* 53 Wn. App. 358, 365, 766 P.2d 1141, *review denied,* 112 Wn.2d 1020 (1989); *see also* 65 C.J.S. *Negligence* § 63(60) (1966); 57 Am. Jur. 2d *Negligence* § 377 (1971). Although this case deals with a grandparent's liability for negligent supervision to or toward his own grandchild and not a third party, the case is instructive on the issue of the general duty to supervise. The measure of the duty owed is determined by what a reasonable person would do in the same circumstances.

> The law does not require that parents or custodians do the impossible for children, "[t]hey are not required to watch them every minute." 57 Am. Jur. 2d, *supra,* § 377, at 785. . . . Thus, one with responsibility for a child's care "has no duty to foresee and guard against every possible hazard", and will not be found to have negligently supervised a child unless he or she "had some knowledge that the child was frequenting a dangerous area, and failed to warn the child or to take other adequate precautions." 57 Am. Jur. 2d, *supra* § 377, at 784–85[.]

(Citation omitted.) *Curran v. Marysville,* 53 Wn. App. at 365–66. Here, Jeremy had never disobeyed his grandfather before. He had been forbidden to go to the Ewings' house and there was no indication that he would disobey.

The case of *Cox v. Hugo, supra,* is also instructive. There, Deborah Cox, age 5, was severely burned when her clothing ignited while playing in or near the remains of a small trash fire started by the 13–year–old son of the Hugos at his mother's direction. On cross appeal, Deborah's parents claimed there was no evidence of negligence on their part, and the issue of contributory negligence should not have been submitted to the jury. The court agreed and stated:

> There is no evidence of contributory negligence by Deborah's parents, unless we are prepared to hold that parents with five–year–old children, who let them go out of the house to play and do not keep them under constant surveillance during the period they are outside of the house, are negligent in their care of their children. We are not prepared to so hold. The law imposes no such impracticable standard. Parents are not

required to restrain their children within doors at their peril. *Westerfield v. Levis Bros.* (1891), 43 La. Ann. 63, 9 So. 52.

*Cox v. Hugo,* 52 Wn.2d at 820; *see also Gabel v. Koba,* 1 Wn. App. 684, 688, 463 P.2d 237 (1969) (quoting W. Prosser, *Torts* § 59 (3d ed. 1964) (it is neither customary nor practicable for parents to follow children around with a keeper, or chain them to a bedpost)).

Appellant's claim of negligent supervision against the McCanns is based on a claim that Mr. McCann did not keep Jeremy under constant supervision while Mrs. McCann was in the shower. Whether the duty owed by the McCanns to third parties was either as parents, standing in loco parentis; a duty created by Restatement (Second) of Torts § 316; a "special relationship" duty created by Restatement (Second) of Torts § 315;[4] or even under a duty because they voluntarily assumed responsibility for the child, the standard is the same. They are liable for the tortious conduct of a child only if they know of the child's dangerous proclivity and fail to take *reasonable* measures to control that proclivity.

Here, there was no evidence presented indicating they breached any duty. Under the rationale of the above-cited authorities and cases, there has been no showing of negligent supervision as the McCanns' actions were reasonable considering the knowledge they had of Jeremy's behavior and the way he had obeyed them in the past. Therefore, as a matter of law, the McCanns are not liable and the summary judgment as to the McCanns is affirmed.

■ The claim against Linda Reeve, Jeremy's mother, was based on the claim that her father, Joseph McCann,

---

[4]Restatement (Second) of Torts § 315 (1965) states the special application of the general rule stated in § 314 but is basically the general principle of the duty to control conduct of third persons. Specifically it states:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

was not a suitable person to be in charge of his grandson and that she should not have left Jeremy in the McCanns' care. Appellant's basis for alleging negligent entrustment and supervision was that Joseph McCann had a disabling back injury and further was taking medication which impeded his ability to care for Jeremy during a short period in which Jeremy disobeyed specific orders and went to the Ewings' home. Because we have found the McCanns were not shown to have negligently supervised their grandson, the claim against Linda Reeve fails as a matter of law. There has been no causal connection shown between any infirmity and a breach.[5]

Linda Reeve and the McCanns, as the moving parties, had the initial burden of proof to establish that there were no material issues of fact. *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975). Once the moving parties have made and supported their motion(s), the burden necessarily shifts to the nonmoving party, the appellant herein, to show that a genuine issue of fact exists for trial. CR 56(e). Linda Reeve and the McCanns met their burden, but a review of the record indicates that appellant did not bring forth any evidence which would indicate anything other than reasonable care by the McCanns or Linda Reeve.

The decision of the trial court is affirmed.

SWANSON and FORREST, JJ., concur.

---

[5]Additionally, the uncontroverted evidence before the court from Mr. McCann's physician, Dr. Bunselmeyer, was that Mr. McCann was mentally and physically fit to care for his grandson at the time of the unfortunate accident.