MCCHORD CREDIT UNION, *Respondent,* v. CLYDE
PARRISH, JR., ET AL, *Defendants,* CLYDE
PARRISH, SR., ET AL, *Appellants.*

*Mark A. Schneider* and *Tipp & Schneider,* for appellants.

*Steven R. Levy,* for respondent.

ALEXANDER, J.—Clyde Parrish, Sr., appeals an order of the Pierce County Superior Court granting a summary judgment in favor of the McChord Credit Union and against him as a guarantor of a debt his son, Clyde Parrish, Jr., owed on a promissory note after credit was given for the proceeds received by McChord from the sale of the collateral. Clyde, Sr., argues on appeal that McChord was not entitled to a deficiency judgment because (1) McChord did not provide statutory notice to him or the principal debtor, Clyde, Jr., of its disposition of the collateral; (2) the sale of the collateral was not commercially reasonable; and (3) McChord, having agreed to Clyde, Jr.'s sale of the collateral to a third party, is estopped from enforcing the guaranty. We modify the judgment.

On February 8, 1985, Clyde Parrish, Jr., obtained a loan from the McChord Credit Union in order to purchase an automobile, a 1985 Honda Accord. The debt owing McChord, $10,014, was guaranteed by Clyde, Sr.[1] Clyde, Jr., made the required monthly payments of $222.75 until October 1986, when he sold the car to Stephanie Irons. Clyde, Jr., asserts on appeal, as he did in the trial court,

---

[1] The guaranty read, in pertinent part, as follows: "If the Borrower fails to pay the debt when due you promise to pay the debt to the Credit Union upon demand. The Credit Union can demand that you pay the debt even if it does not try to collect from Borrower and without enforcing any security interests the Borrower has given the Credit Union.
". . . .

"This guaranty remains in effect even though you are not given notice of the following:
"(1) If the borrower fails to pay any amount due.
"(2) Of any action taken by the Credit Union with respect to property given by the Borrower as security for the debt. . . ."

that he sold the car with the approval of *McChord*.[2] Irons made the monthly payments to McChord until April 1988, when she ceased payment.

On January 5, 1989, McChord filed an action in Pierce County Superior Court for the entire balance due on the note. McChord named as defendants Clyde, Jr., and his wife; Clyde, Sr., and his wife; and Stephanie Irons and her husband.

On January 20, 1989, McChord took possession of the Honda automobile. Sometime later, it advertised the car for sale in the Pierce County Credit Union's newsletter and on signs posted in the credit union lobby. McChord sold the car on March 20, 1989, for $3,500. Neither of the Parrishes received notice of the sale until May 1989. Clyde, Sr., acknowledges, however, that he was aware that McChord had possession of the car in April of 1989.

McChord moved for summary judgment, claiming that as a guarantor of the loan, Clyde, Sr., was liable for the balance due on the note. The motion was granted.

■ The question before us is whether the trial court erred in granting summary judgment to McChord. Summary judgment should be granted only where there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In ruling on the motion, the trial court must view the evidence in the light most favorable to the nonmoving party. If reasonable minds could reach different conclusions on the evidence, the motion for summary judgment must be denied. *Jacobsen v. State*, 89 Wn.2d 104, 569 P.2d 1152 (1977). We engage in the same inquiry as the trial court, on the same record. *Wilson v. Steinbach*, 98 Wn.2d 434, 656 P.2d 1030 (1982).

---

[2]Clyde, Sr., indicated in an affidavit submitted to the trial court that McChord participated in and approved the sale. McChord does not deny the allegation, but merely argues that Clyde, Sr., failed to submit evidence that it participated in and approved the sale. Moreover, the sales agreement between Clyde, Jr., and Stephanie Irons is in the record before us and it provides that Irons will make the payments to McChord.

Clyde, Sr., contends that he and his son were both entitled to proper notification of McChord's sale of the car. He claims that McChord's failure to provide such notice violates the Uniform Commercial Code and precludes McChord from recovering a deficiency judgment. Clyde, Sr.'s contention requires us initially to answer two questions: Was he entitled to notice and, if so, did he receive such notice?

█ In order to recover, a creditor must make a commercially reasonable disposition of the collateral. RCW 62A.9–504(3). The creditor has the burden of proving commercial reasonableness, *Rotta v. Early Indus. Corp.*, 47 Wn. App. 21, 24–25, 733 P.2d 576, *review denied*, 109 Wn.2d 1012 (1987), and reasonableness is a question of fact for the trier of fact. *Service Chevrolet, Inc. v. Sparks*, 99 Wn.2d 199, 204–05, 660 P.2d 760 (1983). One ingredient of commercial reasonableness is sufficient notice both to the debtor and to the public at large. *Rotta*, 47 Wn. App. at 25. RCW 62A.9–504(3) explicitly addresses this:

> [R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . ..

█ Is a guarantor, such as Clyde, Sr., a "debtor" and, thus, entitled to statutory notice? Although Washington law is silent on this issue, we are satisfied by the wealth of case law from other jurisdictions that a guarantor is a debtor within the meaning of Article 9 of the U.C.C. *See, e.g., United States v. Kelley*, 890 F.2d 220, 222 (10th Cir. 1989); *United States v. Willis*, 593 F.2d 247, 255–56 (6th Cir. 1979); *First Nat'l Park Bank v. Johnson*, 553 F.2d 599, 601 (9th Cir. 1977). *See also* 9 R. Anderson, *Uniform Commercial Code* § 9–504:42, at 747–48 (3d ed. 1985) ("[N]otice must be given to persons standing in the position of a 'debtor,' such as a . . . guarantor." (Footnotes omitted.)).

We turn, then, to the second question, whether notice was "sent" to either Clyde, Sr., or Clyde, Jr. We look first

to RCW 62A.1–201(38), which defines the word "send," as follows:

"Send" in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances. . . .

McChord alleges that the notice requirement was satisfied by (1) advertising the sale in the Pierce County Credit Union newsletter and by posting signs in the credit union's lobby; (2) Clyde, Sr.'s knowledge, prior to the sale of the car, that McChord had possession of it; and (3) service of the summons and complaint in this case prior to the sale of the car. This argument fails. McChord did not "send" the debtor a notice, as required. Putting a general notice on the credit union premises or in the newsletter clearly does not meet the statutory requirements. Moreover, through his receipt of the summons and complaint, Clyde, Sr., was aware only of the lawsuit—not that McChord intended to sell the car.

McChord argues, additionally, that Clyde, Sr., waived the notice requirement. It relies on language in the guaranty which reads: "[the guaranty] remains in effect even though [the guarantors] are not given notice of . . . any action taken by the credit union with respect to property given by the borrower as security for the debt . . .." Under the U.C.C., the notice requirement cannot be waived except in writing *after* default. RCW 62A.9–504(3);[3] *see also* RCW 62A.9–501(3).[4] Moreover, as a guarantor, Clyde, Sr., possesses all the defenses available to Clyde, Jr. "As a

---

[3]Reasonable notification must be sent the debtor "if he has not signed after default a statement renouncing or modifying his right to notification of sale . . .." RCW 62A.9–504(3).

[4]The rules that deal with the disposition of collateral "may not be waived or varied except as provided with respect to [RCW 62A.9–504, .9–505, and .9–506] . . .." RCW 62A.9–501(3).

general rule, the surety is not liable to the creditor unless his principal is liable and, accordingly, he may plead any defense which the principal might have used if the action had been brought against him." (Footnote omitted.) A. Stearns, *Suretyship* § 7.1, at 200 (5th ed. 1951). Thus, even if Clyde, Sr., did personally waive the requirement that he be given notice, he did not waive the requirement that notice be given to the principal debtor, Clyde, Jr. The trial court erred in granting summary judgment to McChord in view of the insufficiency of notice.

■■ Despite McChord's failure to comply with the notice requirements of the U.C.C., it does not automatically forfeit the right to recover a deficiency judgment. Failure to give notice allows the debtor, Clyde, Sr., to recover any loss resulting from the failure of notice by setting the loss off against any deficiency recovered by McChord. RCW 62A.9–507(1); *Rotta v. Early Indus. Corp., supra.* The debtor points to no such loss in this case, however.

A creditor who has violated the U.C.C. faces a rebuttable presumption that the value of the collateral is at least equal to the amount of the outstanding debt. *Empire South, Inc. v. Repp*, 51 Wn. App. 868, 879, 756 P.2d 745, *review denied*, 111 Wn.2d 1027 (1988); *Rotta*, 47 Wn. App. at 26–27. In order to overcome the presumption, the creditor must either obtain a fair and reasonable appraisal at or near the time of repossession or produce convincing evidence of the value of the collateral. *Empire South, Inc.*, 51 Wn. App. at 879 (quoting *United States v. Cawley*, 464 F. Supp. 189, 192 (E.D. Wash. 1979)). In order to meet the burden of producing convincing evidence of the value of the collateral, the creditor must "bring forward proof of the condition of the collateral and the usual price of items of like condition." (Italics omitted.) *Empire South, Inc. v. Repp*, 51 Wn. App. at 879 (quoting *United States v. Cawley, supra*). The evidence introduced by the creditor must "pinpoint" the value on the date of repossession. *Empire South, Inc. v. Repp, supra* (quoting the trial court below with emphasis).

Because the trial court in this case concluded that McChord did not violate the U.C.C. provision requiring notice, it did not reach the issues surrounding the presumption and whether or not the presumption was sufficiently rebutted. McChord introduced the affidavit of its collection manager as its sole evidence of the car's value. In that affidavit, she states:

> 5. That they obtained their bids [to purchase the car] ranging from $2,500.00 to $3,500.00.
> 6. That the car had no radio, body damage, heater was inoperable, no battery, and the seats were worn and dirty.
> 7. That given the condition of the car, fair market value was obtained. Retail, according to Blue Book, (N.A.D.A.) the price of the fair market value of the car in good condition was $4,500.00.

We hold that McChord rebutted the presumption that the collateral's value equaled the debt. The affidavit supplies sufficient proof that the collateral was worth $4,500, whereas the debt exceeded $11,600 at the time of sale. We find the N.A.D.A. "Blue Book" figure "convincing evidence" of the car's fair and reasonable value at the time of sale. The balance owing should be offset by this figure. We decline to accept the actual sale price as convincing evidence of the car's value because the collection manager's affidavit does not sufficiently "pinpoint" a lesser value at the time of repossession. It does not specify that the sale was conducted on the open market, nor does it explain how the car's alleged defects devalued it in the round amount of $1,000. McChord is, thus, entitled to summary judgment in the amount of the note balance, less $4,500 (the collateral's value), with interest on the judgment to be adjusted accordingly. The judgment for costs and attorney's fees is otherwise affirmed.[5]

---

[5]Insofar as Clyde, Sr.'s estoppel argument is concerned, suffice it to say that he did not change his behavior in reliance on McChord's alleged actions. *See* *McDaniels v. Carlson*, 108 Wn.2d 299, 308–09, 738 P.2d 254 (1987).

16

Affirmed as modified.

WORSWICK, C.J., and MORGAN, J., concur.