[No. 10778-7-III.   Division Three.   April 30, 1991.]

JAMES F. O'CONNELL & ASSOCIATES, ET AL, *Appellants,* v.
TRANSAMERICA INDEMNITY COMPANY,
*Respondent.*

---

*Tim M. Higgins, Stephen L. Farnell,* and *Winston & Cashatt,* for appellants.

*Michael Myers, Robert T. Carter,* and *Randall & Danskin, P.S.; Carl J. Oreskovich* and *Hemovich, Nappi, Oreskovich & Butler,* for respondent.

MUNSON, J.—James F. O'Connell & Associates, James F. O'Connell, and Sharon O'Connell (Mr. O'Connell) appeal the summary judgment dismissing their complaint and granting Transamerica Indemnity Company's[1] request for a declaration it is not required to provide coverage for them. Mr. O'Connell contends (1) material issues of fact preclude summary judgment, and (2) Transamerica's defense based on allegations of misrepresentation is precluded by statute. We reverse and remand for trial.

Mr. O'Connell, a life insurance broker, sold insurance to Norma and Joey August in 1978–79. In the spring of 1984, Mr. O'Connell arranged to meet with Mr. August, his son Nick August, and their attorney to review the adequacy of the Augusts' life insurance in light of increases in their

---

[1]The policy was originally written by Industrial Indemnity Insurance. Transamerica has assumed liability for the policy after acquiring Industrial Indemnity. We refer to Transamerica as if it were the original issuer.

assets. Mr. O'Connell proposed replacing the existing policies on Mr. and Mrs. Augusts' lives, having a total face value of $491,171, with a single joint survivorship policy with a $1 million face value, plus a policy for Mrs. August having a face value of $200,000. The Augusts' lawyer indicated he was doing some reorganization work and suggested Mr. O'Connell postpone ordering the policies. In light of Mr. August's recent health problems, Mr. O'Connell indicated he would explore whether the insurance he was suggesting would be available. A few weeks later, Mr. O'Connell met with the Augusts and explained to them the need for medical examinations and releases.

Mr. O'Connell eventually found a policy consistent with his proposal which he recommended to the Augusts. According to the Augusts, Mr. O'Connell told them their attorney had approved the changes in their insurance. According to Mr. O'Connell, the Augusts' attorney failed to return his many telephone calls, so he advised Mr. August to discuss the matter directly with the attorney. Mr. O'Connell assumed Mr. August had done so.

After the new policy was issued and the previous insurance had been canceled, Mrs. August learned the new insurance would not provide any benefits until both she and her husband had died. She told her husband, who called their attorney. Ultimately, the new policy was canceled and an attempt was made to reinstate the old life insurance policies. Mr. O'Connell, in the following months, determined the old policies could not be reinstated. He was unable to obtain comparable new insurance for the Augusts.

In November 1985, the Augusts' attorney indicated his intention to refer the matter to the Insurance Commissioner. That same month, an attorney responded on behalf of Mr. O'Connell. On February 7, 1986, the Augusts' attorney wrote to Mr. O'Connell's attorney stating the policy was not adequately represented to the Augusts and had they known the true facts they would not have purchased it. He again stated the matter would be referred to the

Insurance Commissioner. Discussions between the attorneys ceased in March 1986. There was no further written communication on the matter until April 1987.

On February 19, 1986, Mr. O'Connell submitted an application for professional liability insurance to Transamerica. Mr. O'Connell was then insured by American Home Assurance Company; the expiration date of that policy was April 1, 1986. The Transamerica application required Mr. O'Connell to answer the following questions: "c) Sustained an E&O loss or had a claim made against you? d) Any reason to anticipate any claim against you?"[2] In response to the first question, Mr. O'Connell disclosed he was sued in 1977 but that a jury found in his favor and no damages were awarded. In response to the second question, Mr. O'Connell stated "no." On February 24, Mr. O'Connell learned his application had been completed on an expired form, so he immediately filled out the appropriate application and resubmitted it to Transamerica. The same questions were asked and answers given.

On February 25, Mr. O'Connell learned the American Home policy then in effect would not be renewed. He was offered an automatic free 1–year extension or the opportunity to purchase a 5–year extended reporting period. However, because a claims–made policy was issued by Transamerica, effective March 12, 1986, Mr. O'Connell declined the extension offered by American Home.

The Transamerica policy provided:

> This POLICY applies to acts, errors, omissions or personal injuries which occur anywhere in the world provided that claim is made or suit is brought against the INSURED in the United States of America, its territories or possessions and provided further, that such acts, errors, omissions or personal injuries occurred:
>
>  . . . .

---

[2]The same questions were asked and responses given on the renewal application form dated January 20, 1987.

(B) Prior to the effective date of this POLICY, provided that:

(1) As of the effective date of this POLICY, no NAMED INSURED had knowledge of any act, error, omission or personal injury which could reasonably be expected to result in a claim;

The policy did not define the term "claim". The policy was renewed for another year on March 12, 1987.

The Augusts' attorney filed a complaint with the Insurance Commissioner on April 9, 1987, alleging Mr. O'Connell had misrepresented approval of the proposed insurance changes by the Augusts' attorney and the nature of the new insurance. The Insurance Commissioner responded on May 29, indicating the allegations of misrepresentation raised issues of fact which were beyond the jurisdiction of the Commissioner.

The Augusts sued Mr. O'Connell in December 1987; he tendered his defense to Transamerica. When Transamerica refused to defend, Mr. O'Connell commenced this action, seeking a declaration of coverage. Both parties filed summary judgment motions; Mr. O'Connell appeals the court's order granting Transamerica's motion and holding Transamerica had no duty to defend or indemnify him.

Mr. O'Connell contends the court erred because the question of whether he knew of an act, error or omission which "could reasonably be expected" to result in a claim for damages was a question of fact. He further claims that Transamerica must demonstrate as a matter of law that as of the effective date of the policy, it was unreasonable for Mr. O'Connell to believe that no claim would be made by the Augusts in the future, citing *Oregon Auto. Ins. Co. v. Fitzwater*, 271 Or. 249, 531 P.2d 894 (1975). Transamerica responds that the phrase "reasonably be expected" refers to an objective standard, citing *Stiefel v. Illinois Union Ins. Co.*, 116 Ill. App. 3d 352, 452 N.E.2d 73 (1983); it claims coverage depends on what Mr. O'Connell knew, not on how he may have misinterpreted his knowledge. Transamerica

further argues the language pertains to the grant of coverage and is not exclusionary language; therefore, Mr. O'Connell bears the burden to demonstrate his potential liability is covered.

■■ The parties agree the definition of the term "claim" is a "demand on the insured for damages resulting from the insured's alleged negligent act or omission." *Safeco Title Ins. Co. v. Gannon,* 54 Wn. App. 330, 334, 774 P.2d 30, *review denied,* 113 Wn.2d 1026 (1989). As noted further in *Safeco,* at 335, a claim is a demand for compensation; it does not encompass the facts and circumstances which may later give rise to a claim. Thus, a letter in *Safeco* which instructed that the insured "see his attorney" did not constitute a claim. The duty to defend arises only when the allegations of the complaint could, if proven, impose liability upon the insured within the coverage of the policy. *E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.,* 106 Wn.2d 901, 908, 726 P.2d 439 (1986). Coverage under Transamerica's policy is imposed only if (1) the claim for the alleged malpractice was filed during the effective date of the policy and (2) there was no evidence that Mr. O'Connell had knowledge, prior to the effective date of the Transamerica policy, of an act, error or omission which could reasonably be expected to result in a claim against him. As to (1), the complaint was filed while the policy was effective. As to (2), Mr. O'Connell bears the burden of proving he had no such knowledge. *E–Z Loader,* at 906 (citing *Waite v. Aetna Cas. & Sur. Co.,* 77 Wn.2d 850, 467 P.2d 847 (1970)).

In *Gibraltar Cas. Co. v. A. Epstein & Sons, Int'l, Inc.,* __ Ill. App. 3d __, 562 N.E.2d 1039 (1990), the insurer which issued a claims–made professional liability policy brought a declaratory action to determine its scope of coverage. The court held a letter sent to the insured by an attorney for third parties did not give the insured notice of a "claim" against it which would preclude coverage. The letter, written to the insured prior to the application for liability insurance, stated:

Preliminary investigation has revealed that our client has been substantially damaged due to the negligence, nonfeasance and malfeasance of the Epstein Group of Companies and certain individuals.

Please have your counsel contact me.

562 N.E.2d at 1040. When a lawsuit alleging negligence was subsequently filed, the insurance company refused tender of the defense. The court in 562 N.E.2d at 1043–44 states:

In determining whether an insured has had notice of a claim prior to the effective date of a claims–made policy, courts look to the language of the particular policy's claims–made provision, which indicates the degree of awareness on the insured's part which will constitute "notice."

The court distinguished the language in *Gibraltar* from the language in *Stiefel*, relied on here by Transamerica. In *Gibraltar*, the insured was not covered "'for claims of which [it] had prior knowledge.'" *Gibraltar*, 562 N.E.2d at 1045.[3] In *Stiefel*, at 355, the language stated "no insured had knowledge nor could have reasonably foreseen any circumstance which might result in a claim . . .". The court held *Stiefel* required an awareness based upon an objective evaluation of the facts; *Gibraltar* required the insurer to establish the letter gave actual knowledge of a claim, not just a reasonable expectation of a claim. *Gibraltar* also concluded the letter did not constitute a "claim", defined in the policy as an "allegation", the common meaning of which was a statement in a pleading.

■ In construing an insurance policy, the court "must give effect to language that clearly and unambiguously expresses the parties' intent." *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 197, 743 P.2d 1244 (1987). The coverage provisions in the policy Transamerica issued to

---

[3]In answer to an application form asking whether the insured had "knowledge of prior acts, errors or omissions which might reasonably be expected to give rise to a claim under this insurance", the insured responded "no." *Gibraltar*, 562 N.E.2d at 1040. This language is identical to the language in the coverage provisions of Mr. O'Connell's policy. The language was not, however, incorporated in the coverage provisions of the *Gibraltar* policy and was not, therefore, applied by that court.

Mr. O'Connell combine the actual "knowledge" requirement of *Gibraltar* with the "reasonably foreseen" requirement of *Stiefel.* None of the cases cited by the parties construes the precise language used in the Transamerica policy. In interpreting the policy language, the court must look at the acts, errors, and occurrences known to the insured and determine whether the insured would reasonably expect them to result in a claim.

Summary judgment is only appropriate when the record demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Meaney v. Dodd,* 111 Wn.2d 174, 759 P.2d 455 (1988).

The letter and oral communications between the Augusts' attorney and Mr. O'Connell and his attorney do not constitute notice of a "claim" for damages as defined in *Safeco.* Rather, that evidence refers only to the facts and circumstances which later gave rise to the claim alleged in the Augusts' lawsuit. *See Safeco,* at 335.

It is undisputed the Augusts were dissatisfied with the insurance Mr. O'Connell sold to them in 1984 and his inability to reinstate Mr. August's former insurance policy. It is also undisputed the Augusts, through their attorney, threatened to refer the matter to the Insurance Commissioner. Mr. O'Connell's expectation was that the issue would end once reported to the Insurance Commissioner. Whether these facts are acts, occurrences, errors, or omissions knowledge of which would give rise to a reasonable expectation of a claim is an issue for the trier of fact.

In his February 7, 1986, letter to Mr. O'Connell's attorney, the Augusts' attorney said: "The [life insurance] policy was not adequately represented to the parties and had they known the true facts, they would not have purchased it." Whether Mr. O'Connell was aware of this statement, and whether such awareness would have given rise to a reasonable expectation of a claim, are issues for the trier of fact.

Summary judgment was improperly granted in favor of Transamerica. The cause is remanded for trial.

GREEN, C.J., and SHIELDS, J., concur.