995 P.2d 1272 (2000)
100 Wash.App. 94
SECURITY STATE BANK, Respondent,
v.
Fred A. BURK and Randelle L. Burk, husband and wife, Appellants.
No. 24611-2-II.
Court of Appeals of Washington, Division 2.
March 24, 2000.
*1274 James Arthur Connolly, Connolly, Holm, Tacon & Meserve, Olympia, for Appellants.
Richard Antoine Paroutaud, Mano McKerricher Paroutaud, Chehalis, for Respondent.
*1273 SEINFELD, J.
RCW 62A.9-504(3) of the Uniform Commercial Code (U.C.C.) requires a creditor to dispose of a defaulting debtor's collateral in a "commercially reasonable" manner. We hold that an Article 9 guarantor may assert noncompliance with this requirement as an affirmative defense to a creditor action to enforce the guaranty, notwithstanding the guarantor's waiver of defenses arising out of the creditor's "unjustified impairment" of the collateral. Because the guarantors here, Fred and Randelle Burk, raised an issue of material fact as to creditor Security State Bank's commercially reasonable disposition of the debtor's collateral, we reverse the summary judgment in favor of the Bank and remand for trial.

FACTS
The Burks are officers and principals of Tri County Truck & Diesel, Inc. Tri County borrowed $165,000 from the Bank, providing its inventory as security. The Burks also executed a personal guaranty and a deed of trust on real property in Thurston County. On the second page of the guaranty, the guarantor agrees to waive:
any and all rights or defenses arising by reason of ... (d) any right to claim discharge of the indebtedness on the basis of unjustified impairment of any collateral for the indebtedness ... or (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness.
Clerk's Papers at 10.
Tri County defaulted on the debt and the Bank seized the inventory, but allegedly damaged part of it in the process. After selling the goods at public auction for $5,257.50, the Bank filed a complaint to enforce the guaranty and to judicially foreclose on the deed of trust. In their answer, the Burks asserted the affirmative defense that the Bank had not disposed of the collateral in a commercially reasonable manner.
On January 11, 1999, the Bank moved for summary judgment and the court set a February 12 hearing date. Fred Burk filed a responsive affidavit on February 4. In the affidavit and in an attached letter to his attorney, he alleged that the seized inventory had a value of over $515,944 but that the Bank had damaged much of it during the seizure. He alleged that the Bank had (1) ignored his offer to box the new inventory, (2) failed to inventory the repossessed goods, (3) failed to keep the parts separated by product line, (4) literally tossed inventory into the back of a rental truck, and (5) removed the new inventory from its protective packaging and stacked it in a manner that exposed it to damage.
The Bank replied to Fred Burk's affidavit the next day. It argued, among other things, that (1) the court should not consider the Burk affidavit because it was untimely filed, (2) the Burks waived the defense in their guaranty, and (3) the Bank conducted the *1275 inventory liquidation in a commercially reasonable manner.
The trial court granted summary judgment in favor of the Bank.

I. LIABILITY OF GUARANTOR
The Burks argue that the trial court erred in granting summary judgment because there was a genuine issue of material fact as to whether the Bank conducted the liquidation of Tri County's inventory in a commercially reasonable manner under RCW 62A.9-504(3). They further argue that a guarantor's waiver has no effect where the creditor negligently wastes the collateral it repossesses.
Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Bishop v. Miche, 137 Wash.2d 518, 523, 973 P.2d 465 (1999); Taggart v. State, 118 Wash.2d 195, 198-99, 822 P.2d 243 (1992). When reviewing a grant of summary judgment, the appellate court engages in the same inquiry as the trial court, considering facts and reasonable inferences therefrom in the light most favorable to the nonmoving party and reviewing questions of law de novo. Bishop, 137 Wash.2d at 523, 973 P.2d 465.
A guarantor can waive certain defenses. See Fruehauf Trailer Co. of Canada Ltd. v. Chandler, 67 Wash.2d 704, 709-10, 409 P.2d 651 (1966). In Fruehauf, the guarantor asserted a defense of release or discharge of the principal debt. 67 Wash.2d at 709, 409 P.2d 651. The Fruehauf court held that the guarantor contracted away the defense by the clear terms of the guaranty and, thus, was obligated to compensate the creditor for a fixed amount of the creditor's loss attributable to the debtor's breach. 67 Wash.2d at 710, 409 P.2d 651.
But Fruehauf is substantively distinguishable because it did not implicate Article 9 of the U.C.C. This case does.
RCW 62A.9-501(3) states in pertinent part:
To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections referred to in (a) through (e) of this subsection may not be waived or varied except as provided with respect to compulsory disposition of collateral (subsection (3) of RCW 62A.9-504 and RCW 62A.9-505) and with respect to redemption of collateral (RCW 62A.9-506) but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable:
. . . .
(b) subsection (3) of RCW 62A.9-504 and subsection (1) of RCW 62A.9-505 which deal with disposition of collateral[.]
RCW 62A.9-504(3) states, in pertinent part, that "every aspect" of the disposition of the collateral "must be commercially reasonable."
A guarantor is a debtor within the meaning of Article 9 of the U.C.C. McChord Credit Union v. Parrish, 61 Wash.App. 8, 12, 809 P.2d 759 (1991). "`As a general rule, the surety is not liable to the creditor unless his principal is liable and, accordingly, he may plead any defense which the principal might have used if the action had been brought against him.'" McChord Credit Union, 61 Wash.App. at 13-14, 809 P.2d 759 (quoting A. Stearns, The Law of Suretyship § 7.1, at 200 (5th ed.1951)). Thus, a guarantor "possesses all the defenses available" to the principal debtor. McChord Credit Union, 61 Wash. App. at 13, 809 P.2d 759.
In McChord, the creditor sued the guarantor for the deficiency after it sold the collateral securing the principal debtor's loan. 61 Wash.App. at 11, 809 P.2d 759. The creditor had not given notice of the sale to the principal debtor or to the guarantor. McChord Credit Union, 61 Wash.App. at 11, 809 P.2d 759. But the guarantor had waived the notice requirement. McChord Credit Union, 61 Wash.App. at 10 n. 1, 809 P.2d 759.
Observing that an Article 9 debtor may not waive the notice requirement unless it does so in writing after default, RCW 62A.9-504(3), the McChord court rejected the creditor's contention that the guarantor waived the defense of lack of notice under the U.C.C. 61 Wash.App. at 13-14, 809 P.2d 759. The court concluded that the principal debtor's statutory right to notice extended to the guarantor notwithstanding the language of the guaranty. McChord Credit Union, 61 *1276 Wash.App. at 13-14, 809 P.2d 759. As the McChord court noted, even if the guarantor "did personally waive the requirement that he be given notice, he did not waive the requirement that notice be given to the principal debtor[.]" 61 Wash.App. at 14, 809 P.2d 759.
We believe the language and policy underpinnings of the U.C.C. support application of the same reasoning to the reasonableness of the manner in which a creditor Bank liquidates the collateral. Just as a surety is entitled to notification, a "surety who bears responsibility for any deficiency is entitled to a commercially reasonable disposition." 1A Peter F. Coogan, et al, Secured Transactions under the Uniform Commercial Code § 8.06A[2][b], at 8-131 (1991).
The importance of the commercial reasonableness requirement "lies in the fact that the amount of the deficiency judgment will be inversely proportional to the sales price[.]" 4 James J. White and Robert S. Summers, Uniform Commercial Code § 34-10, at 430 (4th ed.1995). The requirement protects "against an unfairly low price." White, supra, at 430. "The price that the secured creditor receives from sale of the collateral is of crucial importance to the debtor because any deficiency is determined by deducting the proceeds of sale from the outstanding debt." White, supra, at 430.
The law does not allow an Article 9 debtor to waive the commercial reasonableness requirement, RCW 62A.9-501(3)(b); RCW 62A.9-504(3). A number of courts have extended this right to the guarantor as well.[1] The authorities holding that a guarantor cannot waive the commercial reasonableness defense are persuasive.
This holding also provides some protection to other of the debtor's creditors. A contrary ruling could dilute the incentive for a creditor to exercise care in dealing with a debtor's assets if the creditor knew it had a financially solvent guarantor. See United States v. Cawley, 464 F.Supp. 189, 195 (E.D.Wash.1979) ("if a secured creditor could always recover against the guarantors, there would be no restraints on a repossessing secured creditor whenever there were guarantors"). The wasted assets are then no longer available to cover the debtor's other obligations. See White, supra, at 432-33 (remaining proceeds from sale of collateral available for junior secured creditors). For example, assuming the truth of the allegations in this case, Tri County's inventory was potentially sufficient to pay its debt to the Bank with more than $300,000 remaining to pay creditors and help restore the failing business to financial health. Consequently, the broad waiver language of the guaranty does not bar the Burks from asserting the commercial reasonableness defense.
The Bank further argues that National Bank v. Equity Investors, 81 Wash.2d 886, 917, 506 P.2d 20 (1973), supports its position. But Equity Investors is inapposite; it did not discuss a guarantor's liability in light of Article 9. 81 Wash.2d at 917-18, 506 P.2d 20.
The absolute nature of the Burks' guaranty simply allowed the Bank to proceed directly against the Burks rather than first seek recovery from Tri County. See Willis, 593 F.2d at 254. But once the Bank elected to repossess Tri County's inventory, the Bank became subject to Article 9's requirements as to the proper disposition of the collateral. Gagel, 815 F.Supp. at 392 n. 6; see also Coogan, supra, § 8.06[2][c], at 8-134 ("Having elected to sell the collateral, the creditor must do so in a commercially reasonable *1277 manner."). "The creditor is required to use its best efforts to sell the collateral for the highest price." Rotta v. Early Indus. Corp., 47 Wash.App. 21, 24, 733 P.2d 576 (1987) (citing Foster v. Knutson, 84 Wash.2d 538, 549, 527 P.2d 1108 (1974)).
"The burden of proving commercial reasonableness is on the creditor, who is in the better position to know and control the nature of resale, and is the one asserting the deficiency judgment." Rotta, 47 Wash.App. at 24, 733 P.2d 576. And "[w]hen the propriety of the disposition of collateral by the secured party is contested, the issue of commercial reasonableness is a question of fact to be determined by the trier of fact." Mount Vernon Dodge, Inc. v. Seattle-First Nat'l Bank, 18 Wash.App. 569, 587, 570 P.2d 702 (1977) (citing Jones v. Morgan, 58 Mich. App. 455, 228 N.W.2d 419, 422 (1975); Pruske v. National Bank of Commerce, 533 S.W.2d 931, 937 (Tex.Civ.App.1976), abrogated on other grounds, Greathouse v. Charter Nat'l Bank-S.W., 851 S.W.2d 173, 176-77 (Tex.1992)); see also Service Chevrolet, Inc. v. Sparks, 99 Wash.2d 199, 204-05, 660 P.2d 760 (1983); McChord Credit Union, 61 Wash.App. at 12, 809 P.2d 759. "Such traditionally factual questions should be determined as a matter of law only in the `clearest of cases.'" Service Chevrolet, Inc., 99 Wash.2d at 205, 660 P.2d 760 (citing Browning v. Ward, 70 Wash.2d 45, 48, 422 P.2d 12 (1966)); Timms v. James, 28 Wash.App. 76, 79, 80, 621 P.2d 798 (1980).
The record shows that the Bank adequately advertised the sale of Tri County's assets. But the Bank has not rebutted the Burks' contention that it negligently damaged the goods; nor has it shown that it attempted to assess the value of or assign any reserve prices to the collateral before conducting the sale. Given the vast difference between the $5,257.50 obtained at sale and the Burks' claimed value of $515,944, there is a reasonable inference that the Bank did not handle the goods and their sale in a commercially reasonable manner.
"Summary judgment is only appropriate when the record demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." James F. O'Connell & Assoc. v. Transamerica Indem. Co., 61 Wash. App. 103, 110, 809 P.2d 231 (1991) (citing Meaney v. Dodd, 111 Wash.2d 174, 177-78, 759 P.2d 455 (1988)). "Even where the evidentiary facts are undisputed, if reasonable minds could draw different conclusions from those facts, then summary judgment is not proper." Chelan County Deputy Sheriffs' Assoc. v. County of Chelan, 109 Wash.2d 282, 295, 745 P.2d 1 (1987) (citing Money Savers Pharmacy, Inc. v. Koffler Stores (Western) Ltd., 37 Wash.App. 602, 608, 682 P.2d 960 (1984)). Viewing the evidence in a light most favorable to the Burks, there is a genuine issue of material fact as to whether the Bank disposed of the collateral in a commercially reasonable manner. Consequently, the trial court erred in granting summary judgment.

II. TIMING OF BURK'S AFFIDAVIT
In the alternative, the Bank argues that this court should affirm on the basis that the Burks did not timely file their responsive affidavit to its summary judgment motion. The Burks concede that the affidavit was untimely but argue that the late filing did not prejudice the Bank.
CR 56(c) states in pertinent part: "The adverse party may file and serve opposing affidavits, memoranda of law or other documentation not later than 11 calendar days before the hearing." In its February 5 reply to Fred Burk's February 4 affidavit, the Bank argued that (1) the trial court should not consider the Burk affidavit because of its untimeliness, and (2) the Burks waived all defenses as a result of the guaranty. Nonetheless, the trial court considered the untimely affidavit and then granted summary judgment in favor of the Bank.
A trial court has discretion regarding the acceptance of an untimely filed affidavit. Brown v. Peoples Mortgage Co., 48 Wash.App. 554, 559, 739 P.2d 1188 (1987); Jobe v. Weyerhaeuser Co., 37 Wash.App. 718, 684 P.2d 719 (1984); CR 56(f) (court may allow continuance if party cannot produce timely affidavits). And the Bank does not argue that the trial court abused its discretion. Moreover, both sides used their opportunity to brief the pertinent issues and argue their respective positions. The Bank prevailed. *1278 Thus, the Bank has not demonstrated prejudice. See Brown v. Safeway Stores, Inc., 94 Wash.2d 359, 364, 617 P.2d 704 (1980); Cole v. Red Lion, 92 Wash.App. 743, 749, 969 P.2d 481 (1998).
The Bank relies on the proposition that this court can affirm summary judgment on any grounds found within the pleadings and proof. Carey v. Reeve, 56 Wash.App. 18, 23, 781 P.2d 904 (1989). But the Bank provides no authority supporting the proposition that an appellate court should reverse a trial court's discretionary ruling regarding late documents in order to uphold the trial court's incorrect substantive ruling. Carey, cited by the Bank, upheld the trial court's ruling on alternative substantive grounds; it did not reverse the trial court's procedural ruling to affirm its substantive ruling. 56 Wash.App. at 25-26, 781 P.2d 904. See also Safeway Stores, 94 Wash.2d at 364, 617 P.2d 704 (a reviewing court will not reverse a lower court on the basis of an untimely filing absent a showing of prejudice).
As the Bank has failed to show that the trial court either abused its discretion or caused it prejudice when it considered the untimely Burk affidavit, this contention lacks merit.

III. ATTORNEY FEES
In their reply brief, the Burks request attorney fees. The matter of attorney fees is more appropriately considered after a determination of the outcome below. Thus, we direct the trial court, following its proceedings, to decide the fee issue. See RAP 18.1(h)(i).
We reverse the summary judgment of dismissal and remand for trial.
ARMSTRONG, A.C.J., and HUNT, J., concur.
NOTES
[1] See, e.g., United States v. Willis, 593 F.2d 247, 255-56 (6th Cir.1979) (holding that guarantor may invoke defense of commercial reasonableness); United Missouri Bank v. Gagel, 815 F.Supp. 387, 393 (D.Kan.1993) ("the reasoning of the cases holding that strict compliance with the notice requirements is a prerequisite to recovery against the guarantor applies with equal force to the statutory obligation to dispose of the collateral in a commercially reasonable manner"); United States v. Hunter, 652 F.Supp. 774, 778-80 (D.Kan.1986) (reasoning that guarantor cannot waive reasonableness requirement under Kansas version of Article 9); May v. Women's Bank, N.A., 807 P.2d 1145, 1151 (Colo.1991) (holding that guarantor is debtor under Colorado version of Article 9 and thus cannot waive the commercial reasonableness requirement); 68A Am.Jur.2d, Secured Transactions, § 769, at 624 (1993) (recognizing authorities holding that "absolute character of the guaranty" does not foreclose defense of commercial unreasonableness). But see United States v. Kurtz, 525 F.Supp. 734, 746-47 (E.D.Pa.1981) (holding that guarantor can waive protections otherwise provided by law).