(853 P.2d 1180)

No. 68,750

UNION NATIONAL BANK OF WICHITA, *Appellant,* v. CLIFFORD J. SCHMITZ, *Appellee.*

Opinion filed June 4, 1993.

*Matthew D. Flesher,* of Morrison & Hecker, of Wichita, for the appellant.

No appearance by the appellee.

Before ELLIOTT, P.J., LEWIS, J., and TIMOTHY E. BRAZIL, District Judge, assigned.

LEWIS, J.: This action was commenced by Union National Bank (UNB) against Clifford J. Schmitz (defendant) for the recovery of a deficiency judgment in the amount of $2,087.97. The trial court concluded that UNB's sale of a repossessed vehicle was not commercially reasonable and denied it a deficiency judgment. UNB appeals from that decision. After careful review, we reverse the decision of the trial court and remand with directions.

The original lawsuit was filed as a limited action, and the evidence offered by UNB to sustain its burden of proof was also limited. UNB called one witness, an assistant vice-president. The evidence indicated that the defendant had borrowed $4,662.40 from UNB to purchase a 1983 Buick automobile from a local dealer.

The documents required the defendant to pay $194.97 per month on the note purchased by UNB. The defendant failed to do so on a regular basis and, in time, was in default. UNB sent the defendant a right to cure notice, which was apparently ignored. An unsuccessful attempt was made to work something out on payments. When this failed, the defendant voluntarily surrendered the vehicle in question to UNB.

After it had been in possession of the vehicle for some period of time, UNB sent another notice to the defendant advising him that the property would be sold at private sale at any time after a specified date. This same notice advised the defendant that he had the right to redeem the collateral at a stated figure. The defendant was also advised by this notice that he would be held responsible for any deficiency balance remaining after the sale of

the vehicle. The vehicle was sold without further notice to the defendant.

The witness called by UNB described the vehicle as being in a "rough" condition when repossessed and in "fair to poor shape." The witness testified that the paint was faded, it was dented with some rust, the interior visors were missing, and the driver's seat was shredded. In order to prepare the vehicle for sale, UNB spent $15 having it washed and vacuumed.

The vehicle was sold at the Mid-America Auto Auction. This auction was described by the UNB witness as a dealer-only auction, which was held every week on Thursday. The UNB witness testified that the auction was well known to dealers in the Wichita area and was well attended by dealers. It was explained that bidding at the auction was on a competitive basis and that UNB retained the right to reject any and all bids. The vehicle voluntarily surrendered by the defendant was sold at this auction for $920, minus a $75 sale fee, and the witness for UNB testified, "I believe it was the fair value of the car at the time."

The defendant offered no evidence. The defendant was present in person during the trial of the matter but did not retain counsel. He did testify briefly but offered nothing substantial to contradict the testimony of the plaintiff's witnesses. If the defendant had a particular objection to what took place, it appears that his complaint was that the vehicle did not sell for as much money as he thought it was worth. The defendant has not filed a brief with this court.

The trial court, after hearing the evidence, held that the plaintiff had not sustained its burden of proof to show that the sale of the vehicle was commercially reasonable. The court then denied the plaintiff's prayer for a deficiency judgment. There are no findings set out by the trial court, and we must take its rationale from comments made on the record. Of those comments, the following reveals the court's reasoning on the issue:

"This vehicle was then sent to a public auction which was, however, restricted to automobile dealers and effectively precluding the defendant from making a bid or from any other nonautomobile dealer from making a bid and effectively restricting the price which could be obtained for a wholesale price.

"Therefore, the vehicle, the Court finds, was not reasonably exposed on the retail market; and, accordingly, the Court finds that the plaintiff has failed to sustain his burden of proving that the sale was conducted in a commercially reasonable manner."

The only issue on appeal is whether the trial court erred in its conclusion that the sale of the automobile by UNB was not commercially reasonable.

## STANDARD OF REVIEW, BURDEN OF PROOF, ETC.

This is a consumer credit transaction and is governed by the Kansas Uniform Consumer Credit Code (UCCC).

K.S.A. 16a5-103 of the UCCC provides in part:

"(1) This section applies to a deficiency on a consumer credit sale of goods or services and on a consumer loan in which the lender is subject to defenses arising from sales (section 16a-3-405); *a consumer is not liable for a deficiency unless the creditor has disposed of the goods in good faith and in a commercially reasonable manner.*" (Emphasis added.)

It should come as no surprise that our Supreme Court has interpreted the emphasized language quite literally. In this state, it is settled law that in proceedings governed by the UCCC a debtor is not liable for a deficiency judgment *as a matter of law* unless the goods have been disposed of in good faith and in a commercially reasonable manner. *Prairie State Bank v. Hoefgen,* 245 Kan. 236, 248-49, 777 P.2d 811 (1989); *Westgate State Bank v. Clark,* 231 Kan. 81, 85, 642 P.2d 961 (1982). It is apparent in this case that the plaintiff is not entitled to a deficiency judgment unless the trial court erred in its conclusion that the sale was not commercially reasonable.

Although the UCCC controls this factual situation, it *does not* define what is or is not commercially reasonable.

"As the Kansas Comment reveals, in consumer credit transactions involving default, the Kansas Uniform Consumer Credit Code governs. However, when the UCCC is silent on consumer default, then the UCC provisions on default (K.S.A. 84-9-501 *et seq.*) are to be applied. Consequently, as the UCCC does not define what is a commercially reasonable disposition of repossessed collateral in a consumer credit transaction, courts may refer to UCC decisions in determining what is a commercially reasonable disposition of collateral." *Medling v. Wecoe Credit Union,* 234 Kan. 852, 863, 678 P.2d 1115 (1984).

The net result is that, while this is a case controlled by the UCCC, our principal references from this point forward will be the UCC and cases decided under that code.

The first question we must resolve is the manner in which it is determined whether a disposition is or is not commercially reasonable. This process has been defined by our courts as to be one of a question of fact:

"Unfortunately, the UCC does not specifically define the term 'commercially reasonable.' Because the statutory definition of a commercially reasonable sale is vague, the cases generally hold that a factual determination as to whether a sale was commercially reasonable must depend on the particular facts of each case. See *Hall v. Owen Co. State Bank, et al.,* 175 Ind. App. 150. We agree that the determination of the issue whether a sale was held in a commercially reasonable manner is a question of fact to be determined in each particular case by the trier of fact, and that, in an action for a deficiency judgment, the secured creditor has the burden of proof to show that the disposition or sale of the collateral was made in a commercially reasonable manner." *Westgate State Bank v. Clark,* 231 Kan. at 91.

"The commercial reasonableness of a sale of collateral by a secured creditor is a question of fact to be determined by the trier of fact. The creditor has the burden of proving commercial reasonableness. *Garden Nat'l Bank v. Cada,* 241 Kan. 494, 495, 738 P.2d 429 (1987); *Kelley v. Commercial National Bank,* 235 Kan. 45, 51, 678 P.2d 620 (1984)." *Prairie State Bank v. Hoefgen,* 245 Kan. at 248-49.

It is well established that whether a particular disposition was done in a commercially reasonable manner is a question of fact to be determined by the trier of fact. The burden of proving that collateral was disposed of in a commercially reasonable manner is placed upon the secured creditor—in this case, UNB.

In the ordinary case, the standard of review of this court would be to determine whether the findings of the trial court are supported by substantial competent evidence. *Medling v. Wecoe Credit Union,* 234 Kan. at 866.

## DEALER ONLY WHOLESALE AUCTION

The method utilized to dispose of the collateral in this case was a well-known, regularly scheduled, dealer-only wholesale auction. The trial court's findings that this sale was commercially unreasonable are so broad that they virtually declare any dealer-only wholesale auction to be not commercially reasonable. In deciding this issue, the trial court focused solely on the nature

of the auction and the price received for the vehicle. The trial court's decision, if allowed to stand, would mean that a dealer-only wholesale auction could not be commercially reasonable. This is not the law, and the trial court erred in reaching this conclusion.

We conclude that a dealer-only wholesale auction may be commercially reasonable and that the trial court erred in finding that it cannot be commercially reasonable. We reach this conclusion not because the decision is not supported by substantial competent evidence but because the trial court focused on the wrong factors in reaching its decision.

The trial court reasoned that the sale was not commercially reasonable because it was restricted to dealers only and the defendant could not bid. There is no support in the law for such a conclusion.

"The duty to give notice of the sale of repossessed collateral is defined by K.S.A. 84-9-504(3), which provides in relevant part as follows:

'Unless collateral is perishable or threatens to decline speedily in value or is of a type sold on a recognized market, reasonable notification of the time and place of any public sale or *reasonable notification of the time after which any private sale or other intended disposition is to be made* shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent.' (Emphasis added.)

"The statute clearly distinguishes between the type of notice which must be given when the secured creditor selects a private as opposed to a public sale. Only if the sale is public need the debtor be given notice of where and when the sale will take place. As to a private sale, the creditor must inform the debtor of the date after which the sale will be made." *Garden Nat'l Bank v. Cada,* 241 Kan. 494, 496, 738 P.2d 429 (1987).

The Supreme Court in the *Cada* decision concluded that a dealer-only auction, such as that involved in the instant matter, was a private sale.

"In the instant case, Mrs. Cada's automobile was sold at a wholesale car dealer's auction in Denver, Colorado. Only a limited class of persons, car dealers, were entitled to participate at the sale. As Mrs. Cada or members of the public could not participate in the auction, notice of the time and place of the sale would have served little purpose." 241 Kan. at 497.

It is clear that the Kansas Supreme Court has recognized the validity of a dealer-only auction. Since this auction has been determined to be a private sale, the debtor not only has no right to bid, he need not even be given notice of the time and place of such sale. Reasoning by analogy, it becomes apparent that the fact that the defendant was precluded from making a bid is irrelevant in determining whether the sale was commercially reasonable. The trial court erred in concluding that, since the defendant could not bid, the sale was not commercially reasonable.

The trial court also focused on the fact that the auction was a "wholesale" auction in finding that it was not commercially reasonable. Indeed, the court seems to say that a vehicle must be exposed to the retail market or the sale is not commercially reasonable. This conclusion also has no support in the law of this state.

The essential difference between a "retail" and a "wholesale" auction is the price for which the goods will be sold. Obviously a wholesale price is by definition somewhat lower than a retail price. The focus on the price received is much too narrow.

As pointed out under these circumstances, reliance may be had on the UCC in order to determine commercial reasonableness under the UCCC. K.S.A. 84-9-507(2) provides in relevant part:

*"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner.* If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner." (Emphasis added.)

In *U.S. v. Cox,* 731 F. Supp. 1023, 1025-26 (D. Kan. 1990), the defendants argued that the sale was not commercially reasonable because the price received was inadequate. The federal district judge cited K.S.A. 84-9-507(2) and held: "Nonetheless, the fact that a better price might have been obtained if the sale had been conducted in a different manner does not by itself establish that the sale was commercially unreasonable." For de-

cisions from another jurisdiction to the same effect, see *Lee v. Trust Co. Bank*, 204 Ga. App. 28, 418 S.E.2d 407 (1992); *McMillian v. Bank South, N.A.*, 188 Ga. App. 355, 373 S.E.2d 61 (1988); *Richard v. Fulton Nat. Bank*, 158 Ga. App. 595, 281 S.E.2d 338 (1981).

In *Westgate State Bank v. Clark*, 231 Kan. at 93, our Supreme Court discussed the question of wholesale versus retail disposition:

"In many cases, a retail sale of the goods will command a much higher price; however, a retail sale may involve more expenses and usually will take much longer to conclude. This in turn may not be reasonably feasible in view of higher storage expense and higher interest accumulation on the obligation. In some cases, a sale to a dealer on the wholesale market may be the more reasonable approach. Sales to a dealer seem to be suggested under § 9-504 and the official comments under that section and also in the official comment to § 9-507(2) which suggests that sale of repossessed collateral through a dealer may be the better method in the long run since the secured party does not usually maintain his own facilities for making such sales. The answer to the question whether a sale on the retail or wholesale market is commercially reasonable must generally depend upon the circumstances of each particular case and, therefore, is a question of fact for the factfinder to determine."

We note that in *Garden Nat'l Bank v. Cada*, 241 Kan. 494, a dealer-only wholesale sale was affirmed by the Supreme Court. It does not appear, however, that the question of wholesale versus retail disposition was an issue in that case.

We think it apparent from the decisions and the statutes cited that the mere fact collateral is sold at wholesale and not "exposed to the retail market" is not in and of itself sufficient to render a sale commercially unreasonable. The trial court in the instant matter erred in reaching this conclusion.

In the final analysis, the determination of whether a sale was commercially reasonable is a complex question which requires the consideration of many factors. For instance, in *Prairie State Bank v. Hoefgen*, 245 Kan. at 249, the Supreme Court indicated that "[t]he passage of time is but one factor to consider in the determination of whether a sale is commercially reasonable." In *Westgate State Bank v. Clark*, 231 Kan. at 91, our Supreme Court stated:

"In deciding whether or not the sale of the collateral was accomplished in a commercially reasonable manner; the trial court should consider all of

the relevant factors together as a part of a single transaction. As pointed out by the court in *In Re Zsa Zsa Limited,* 352 F. Supp. 665 (S.D.N.Y. 1972):

> 'It is the aggregate of circumstances in each case—rather than specific details of the sale taken in isolation—that should be emphasized in a review of the sale. The facets of manner, method, time, place and terms cited by the Code are to be viewed as necessary and interrelated parts of the whole transaction.' "

In *Westgate,* the court set out nine factors to be considered by the court in determining the commercial reasonableness of a disposition. 231 Kan. at 92-95. In *Medling v. Wecoe Credit Union,* 234 Kan. at 863, the court held: "We see no legitimate reason why the *Westgate* rationale should not be applied to determining whether or not a sale of collateral was commercially reasonable under the UCCC."

The nine factors as set forth and discussed in the *Westgate* decision are: (1) The duty to clean up, fix up, and paint up the collateral; (2) public or private disposition; (3) wholesale or retail disposition; (4) disposition by unit or in parcels; (5) the duty to publicize the sale; (6) length of time collateral held prior to sale; (7) the duty to give notice of the sale to the debtor and competing secured parties; (8) the actual price received at the sale; and (9) other factors.

The trial court in this case did not apply all of the *Westgate* factors. It focused only on the nature of the sale and the fact that the vehicle was not exposed to a "retail market." The trial court did not consider the "aggregate of circumstances" as required, and this was error.

We hold that the trial court erred in holding that a dealer-only wholesale auction is per se not a commercially reasonable manner in which to dispose of collateral.

We emphasize that we do not hold here that such a sale is per se commercially reasonable. We hold only that it is not per se commercially unreasonable. The determination of whether such a sale is commercially reasonable must be made on a case-by-case basis considering the *Westgate* factors and the aggregate of circumstances shown. The decision of the trial court in the instant matter was much too narrowly focused.

The burden of proving that a sale is commercially reasonable is placed upon the secured party. It is apparent that, in order

to prove this fact, counsel must be prepared to touch on all of the *Westgate* factors which apply. A failure to do so may result in a record which is insufficient to prove the commercial reasonableness of a particular disposition.

## WAS THIS SALE COMMERCIALLY REASONABLE?

The next question is whether, based on the record, the sale in this particular case was commercially reasonable. The record in this action is skimpy. It is apparent that counsel for UNB proved only the bare essentials. The defendant was not represented by an attorney, and this factor may have led to a false belief that the proof required was only that of a barebones nature. We think such a belief to be misplaced.

Although the record is skimpy, we conclude the plaintiff did focus on a number of the *Westgate* factors. The testimony of the witness called by UNB was uncontradicted by the defendant. The defendant appears not to question notice given or even necessarily the manner in which the vehicle was sold. He has not chosen to file a brief with this court, and, as near as we can tell from the brief comments made by the defendant on the record, he was only unhappy with the price received. Based on the uncontradicted testimony of the witness for UNB, we hold that there was adequate proof the sale in this case was commercially reasonable.

We have held the trial court erred in focusing too narrowly on the nature of the sale and on the price received. When those elements are considered along with the other facts shown and considered in the aggregate, the record shows a commercially reasonable sale and there is no evidence to the contrary. While the evidence is certainly lacking in details and specificity, it is totally uncontradicted and sufficient to prove that the sale was commercially reasonable. We hold that the trial court erred in concluding the sale in this case was not commercially reasonable. We reverse that decision and remand with instructions to enter a deficiency judgment in favor of the plaintiff and against the defendant.

Reversed and remanded.