**FORD MOTOR CREDIT COMPANY,**
Respondent,

v.

**Dawn M. RUSSELL, et al., Defendants and Third-Party Plaintiffs, Appellants,**

v.

**MONTICELLO FORD AND MERCURY, INC., Third-Party Defendant, Respondent.**

No. CX–93–2581.

Court of Appeals of Minnesota.

July 19, 1994.

Review Denied Sept. 28, 1994.

461

Richard G. Nadler, Thomas J. Lyons, Steven T. Appelget, St. Paul, for appellants.

Vernle C. Durocher, Jr., Sharon M. Dobbs, Minneapolis, for Ford Motor Credit Co.

Stephan A. Pezalla, Golden Valley, for Monticello Ford and Mercury, Inc.

Considered and decided by KALITOWSKI, P.J., and HUSPENI and AMUNDSON, JJ.

## OPINION

HUSPENI, Judge.

Appellants Dawn Russell and David Russell challenge entry of summary judgment in favor of respondents Ford Motor Credit Company and Monticello Ford and Mercury, Inc. on appellants' claims for breach of contract, violation of the Minnesota Motor Vehicle Retail Installment Sales Act, the Federal Truth in Lending Act, and the Federal Equal Credit Opportunity Act. Because we find that the automobile advertisement did not constitute an offer to the general public, and that Ford Credit complied with the various Acts in question and resold the automobile in a commercially reasonable manner, we affirm.

## FACTS

During March 1988, Monticello Ford and Mercury, Inc. (Monticello Ford) advertised a 1988 Ford Escort Pony in *The Monticello Shopper* for a sale price of $7,826. The publication advertised monthly payments of $159.29, based on a 60–month loan at 11% A.P.R. On March 15, 1988, Dawn Russell sought to purchase a 1988 Escort at the advertised sales price. Monticello Ford contacted three finance companies in an attempt to obtain 11% financing for Ms. Russell. Two companies refused to extend credit due to Ms. Russell's limited credit history. Ford Motor Credit Company (Ford Credit) offered to finance the purchase at a 13.75% A.P.R. under a special retail plan for persons with limited or poor credit. Ford Credit also required Ms. Russell to provide a cosigner on the loan.

Monticello Ford drew up the contract, which Ms. Russell signed, providing for the sale of the automobile at a cash price of $7,826. Ms. Russell also purchased optional credit disability insurance and an extended service contract, which she financed. The total amount financed was $8,275.60, to be paid in 60 monthly installments of $192.63, based upon an A.P.R. of 13.75%. Ms. Russell's father cosigned the loan.

Monticello Ford subsequently assigned to Ford Credit its rights under the contract. The contract provided that, upon default, Ford Credit could accelerate the balance due and repossess the vehicle. On April 19, 1989, Ms. Russell cancelled her credit life insurance, as well as the extended service contract. The unused premiums were applied to the balance of her loan, reducing her monthly payments as a result.

In 1990, Ms. Russell defaulted on numerous payments. After several failed attempts to work out a payment schedule, Ford Credit sent the Russells a notice of default and intent to repossess. Ford Credit repossessed the automobile on February 13, 1991, and mailed the Russells a notice of repossession and right to redeem and a notice of private sale that same day. Neither Ms. nor Mr. Russell attempted to redeem the automobile. Ford Credit sold the automobile for $2,200 to a used car dealer at the Minneapolis Auto Auction.

When Ford Credit sought a deficiency judgment against the Russells, they counterclaimed, alleging breach of contract and violation of the Minnesota Motor Vehicle Retail Installment Sales Act, the Federal Truth in Lending Act and the Federal Equal Credit Opportunity Act, and named Monticello Ford as a third-party defendant. The district court granted Ford Credit's motion for summary judgment on its deficiency claim, and Monticello Ford's motion for summary judgment on the Russells' third-party complaint.

## ISSUES

1. Do genuine issues of material fact exist regarding appellants' claims related to deceptive trade practices?

2. Do genuine issues of material fact exist regarding appellants' claim for interference with insurance rights?

3. Do genuine issues of material fact exist regarding appellants' claim relating to the Federal Truth in Lending Act?

4. Do genuine issues of material fact exist regarding appellants' claim relating to the Minnesota Motor Vehicle Retail Installment Sales Act?

5. Do genuine issues of material fact exist regarding appellants' claim that the automobile was sold in a commercially unreasonable manner?

## ANALYSIS

On appeal from summary judgment, this court must decide whether genuine issues of material fact exist, and whether the district court correctly applied the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The evidence must be viewed in the light most favorable to the nonmoving party. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982).

### I. Deceptive trade practices

■ Appellants contend that the advertisement in *The Monticello Shopper* constituted an offer that Ms. Russell accepted, and therefore Ford Credit breached its contract to sell her a 1988 Ford Escort at 11% A.P.R. We disagree. Generally, if goods are advertised for sale at a certain price, it is not an offer and no contract is formed; such an advertisement is merely an invitation to bargain rather than an offer. 1 Samuel Williston, *A Treatise on the Law of Contracts* § 4:7 (4th ed. 1990); Restatement (Second) of Contracts § 26 (1981). The test of whether a binding obligation may originate in advertisements addressed to the general public is "whether the facts show that some performance was promised in positive terms in return for something requested." *Lefkowitz v. Great Minneapolis Surplus Store, Inc.*, 251 Minn. 188, 191, 86 N.W.2d 689, 691 (1957) (quoting 1 Samuel Williston, *A Treatise on the Law of Contracts* § 27) (3rd ed. 1957)).

■ We conclude that the advertisement here did not constitute an offer of sale to the general public. *See id.* (an advertisement may constitute an offer where it is clear, definite, explicit, and leaves nothing open for negotiation). Because not everyone qualifies for financing and Monticello Ford does not have an unlimited number of Ford Escorts to sell, it was unreasonable for appellants to believe that the advertisement was an offer binding the advertiser.

Appellants further contend that Monticello Ford falsely represented that financing would be provided at 11%, then changed the rate when it reduced the parties' agreement to writing. There is no evidence, however, that either Ford Credit or Monticello Ford induced Ms. Russell to enter into the contract by promising her an 11% A.P.R. The written contract clearly and conspicuously stated that a 13.75% A.P.R. applied to the financing. Ms. Russell admits that she had ample opportunity to hold the contract in her hands without any obstruction and read it before signing it.

■ Appellants also assert that Ford Credit participated in a "bait and switch" operation. *See* Minn.Stat. § 325D.44, subd. 1(9) (1992) (the advertising of goods or services with intent not to sell them as advertised is prohibited). We disagree. Monticello Ford did sell 1988 Ford Escorts at an 11% A.P.R. to those who qualified for the rate. Ms. Russell received the same sale price and the same rebate as the other customers; she merely did not qualify for the same interest rate.

Appellants argue further that when they were denied the 11% advertised financing rate, Ford Credit failed to provide them with notice of "adverse action" as required by the Equal Credit Opportunity Act (ECOA). Because appellants neither alleged such a violation in their complaint nor argued such a violation in opposition to Ford Credit's motion for summary judgment, the argument is waived on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (issues not raised or argued to the district court cannot be decided for the first time on appeal).

The only ECOA violation alleged by appellants and decided by the district court regarded whether Ford Credit properly re-

quired Ms. Russell to have a cosigner on the loan. Under the ECOA, a creditor cannot require a cosigner "if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d)(1) (1993). Appellants contend that a genuine issue of fact exists as to whether Ms. Russell was creditworthy. We disagree. The finance sheet presented by Ford Credit showed that two different companies refused to extend credit to Ms. Russell because it was not worth the risk even with a cosigner. Appellants did not present any evidence indicating that Ms. Russell was creditworthy. To the contrary, she admits that she had no credit history when she applied for the loan and expected to need a cosigner. Because appellants failed to raise a genuine issue of material fact regarding Ms. Russell's creditworthiness, summary judgment was proper.

## II. Interference with insurance rights

Appellants contend that Ford Credit interfered with Ms. Russell's credit disability insurance rights because it should have looked to the benefits provided by the insurance before repossessing her automobile. We disagree. Ms. Russell cancelled her credit disability insurance in April 1989. She defaulted on loan payments in 1990, long after she terminated her insurance. Ford Credit could not look to benefits that did not exist at the time of the default.

Appellants argue further that Ford Credit failed to honor the terms of the credit insurance policy on one occasion when Ms. Russell was actually disabled. We again disagree. Although Ms. Russell had to make payments to Ford Credit while she was disabled, she was eventually reimbursed through her insurance. Appellants cannot demonstrate how Ford Credit violated the terms of the contract. Nor does Ms. Russell indicate how she was damaged by the manner in which the claim was handled. Hence, summary judgment was proper.

## III. Truth in Lending Act

■ Appellants contend that new disclosures were required under the Truth in Lending Act (TILA) because the loan amount changed when Ms. Russell cancelled her credit disability insurance and the extended service contract. *See* 15 U.S.C. § 1638(a)(2)(A) (1988) (the creditor must disclose the amount financed). Appellants concede that the TILA does not require additional disclosure except in cases involving refinancing, assumption, or variable rate adjustments. 12 C.F.R. § 226.20(a)–(c) (1993). They argue, however, that a refinancing occurred. We disagree.

A refinancing occurs when an existing obligation is satisfied and replaced by a new obligation undertaken by the same consumer. 12 C.F.R. § 226.20(a) (1993). Here, appellants originally financed the credit disability insurance and extended service contract. When they were cancelled, the unused premiums were applied to the balance of the loan, reducing the monthly payments as a result. Appellants did not object to how the premiums were applied. Because appellants' existing obligation was not satisfied and replaced by a new obligation, the transaction was not a refinancing. Thus, Ford Credit was not required to make new disclosures, and summary judgment was proper.

## IV. Motor Vehicle Retail Installment Sales Act

■ Appellants contend that the Motor Vehicle Retail Installment Sales Act (MVRISA) requires the entire agreement of the parties to be in writing. *See* Minn.Stat. § 168.71(a)(1) (1992) (every retail installment contract shall be in writing and shall contain all the agreements of the parties). Appellants do not dispute that Ford Credit complied with the MVRISA when the original contract was executed. They assert rather that a new agreement should have been executed because a new contract resulted from the cancellation of the credit disability insurance and extended service contract. We disagree. A new contract does not result simply because a debtor pays off a portion of the loan's principal. Because appellants cannot point to any provision in the Act that requires a new agreement under these circumstances, summary judgment was proper.

## V. Commercially reasonable sale

■ Appellants contend that a genuine issue of material fact exists regarding whether Ford Credit sold the repossessed automobile in a commercially reasonable manner so as to preclude summary judgment. We disagree.

Although commercial reasonableness is generally a question of fact, *Karlstad State Bank v. Fritsche*, 374 N.W.2d 177, 181 (Minn. App.1985), it is an appropriate subject of summary judgment when the secured creditor makes a prima facie showing that the sale was reasonable and the debtor fails to assert specific facts showing a genuine issue for trial.[1] *See Elk River Ford, Inc. v. Hoecherl*, 428 N.W.2d 857, 859 (Minn.App.1988) (the secured party bears the burden of showing that the disposition of collateral was commercially reasonable); *see also Ford Motor Credit Co. v. Hertzberg*, 511 N.W.2d 25, 27 (Minn. App.1994) (once the secured party meets its burden, the party contesting the sale must show specific evidence of commercial unreasonableness and of the loss incurred), *pet. for rev. denied* (Minn. Mar. 31, 1994).

Minn.Stat. § 336.9–507(2) (1992), provides:

If the secured party either sells the collateral in the usual manner in any recognized market therefor or if the secured party sells at the price current in such market at the time of the sale or if the secured party has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold the sale has been made in a commercially reasonable manner.

Here, Ford Credit sold the automobile at the Minneapolis Auto Auction, a wholesale auction that only dealers may attend. Ford Credit has established that the auction is a well-recognized market for hundreds of auto dealers in the Minneapolis area. Once a secured creditor shows that it disposed of the collateral in compliance with Minn.Stat. § 336.9–507, commercial reasonableness is presumed and the debtor must raise a genuine issue for trial so as to preclude summary judgment. *See Ford Motor Credit Co. v. Solway*, 825 F.2d 1213, 1216 (7th Cir.1987) (dealer-only auction was commercially reasonable); *Chrysler Credit Corp. v. Curley*, 753 F.Supp. 611, 619 (E.D.Va.1990) (same); *Ford Motor Credit Co. v. Devalk Lincoln–Mercury, Inc.*, 600 F.Supp. 1547, 1551–52 (N.D.Ill.1985) (dealer-only auction conformed to the UCC and therefore was presumed to be commercially reasonable).

■ Appellants contest the fact that Ford Credit sold the automobile at a private auction, as opposed to a public auction or at retail. The disposition of collateral, however, may be by public or private proceedings. Minn.Stat. § 336.9–504(3) (1992). Appellants also argue that the subsequent retail sale price, which was higher than the auction price, indicates the commercial unreasonableness of the sale. Allegations that a better price could have been obtained through a different method of sale alone, however, are not sufficient to raise a factual issue as to commercial reasonableness. Minn.Stat. § 336.9–507(2); *Hertzberg*, 511 N.W.2d at 27.

This court remanded the issue of commercial reasonableness in *Hertzberg* because, al-

---

1. Several jurisdictions have found summary judgment appropriate under similar circumstances. *See Daniel v. Ford Motor Credit Co.*, 612 So.2d 483, 484–85 (Ala.Civ.App.1992) (private auction was commercially reasonable where only dispute was with the price and whether the auction should have been public rather than private); *Gaynor v. Union Trust Co.*, 216 Conn. 458, 582 A.2d 190, 199–200 (1990) (sale of repossessed vehicles through a wholesale auction is commercially reasonable); *McMillian v. Bank South, N.A.*, 188 Ga.App. 355, 373 S.E.2d 61, 62–63 (1988) (private sale by recognized auto auction was standard practice for over 11 years and was reasonable method of sale); *Calcote v. Citizens & Southern Nat'l Bank*, 179 Ga.App. 132, 345 S.E.2d 616, 619 (1986) (private sale is provided for in the UCC and therefore presumed to be commercially reasonable); *Slaughter v. Ford Motor Credit Co.*, 164 Ga.App. 428, 296 S.E.2d 428, 429 (1982) (car owner presented no evidence to raise a genuine issue of fact for trial); *Union Nat'l Bank of Wichita v. Schmitz*, 18 Kan. App.2d 403, 853 P.2d 1180, 1184 (1993) (dealer only wholesale auction was commercially reasonable); *Parks Chevrolet, Inc. v. Watkins*, 74 N.C.App. 719, 329 S.E.2d 728, 730 (1985) (presumption of commercial reasonableness arises if sale is in compliance with the UCC); *Huntington Nat'l Bank v. Elkins*, 53 Ohio St.3d 79, 559 N.E.2d 456, 459 (1990) (primary focus of commercial reasonableness is the procedure employed for the sale, not the proceeds received from the sale); *Ford Motor Credit Co. v. Potts*, 47 Ohio St.3d 97, 548 N.E.2d 223, 228 (1989) (auction of repossessed automobile was reasonable).

though the debtor knew someone who wanted to buy his repossessed truck, the credit company ignored this potential buyer and sold the truck at the Minneapolis Auto Auction. *Hertzberg,* 511 N.W.2d at 26. This court determined that a material fact issue existed where Ford Credit proceeded with its usual method of sale even though it had a willing buyer available. *Id.* at 27.

Here, Ford Credit was not presented with a potential buyer at the time of the auction. Even though the used auto dealer who bought appellant's car at the auction eventually resold it, that retail buyer was not available when Ford Credit auctioned the vehicle. Because appellants failed to provide some specific evidence of commercial unreasonableness in the method of sale, summary judgment was proper.

### DECISION

The automobile advertisement did not constitute an offer to the general public so as to bind the advertiser. Ford Credit did not violate the Equal Credit Opportunity Act by requiring Ms. Russell to provide a cosigner on her loan. Ford Credit did not violate the Truth in Lending Act by failing to provide new disclosures when Ms. Russell prepaid a portion of the loan principal. A new contract did not result from the cancellation of credit disability insurance and extended service contract, and therefore Ford Credit was not obligated to provide Ms. Russell with a new agreement under the Motor Vehicle Retail Installment Sales Act. Ms. Russell failed to raise a genuine issue of material fact regarding the commercial reasonableness of the sale, and summary judgment was proper.

**Affirmed.**