660 So.2d 1273 (1995)
FORD MOTOR CREDIT COMPANY,
v.
George MATHIS.
No. 92-CA-00418-SCT.
Supreme Court of Mississippi.
August 3, 1995.
Rehearing Denied October 12, 1995.
Nicholas Van Wiser, Byrd & Wiser, Biloxi, for appellant.
Williams S. Murphy, Murphy & Shepard, Lucedale, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, JJ.
JAMES L. ROBERTS, Justice, for the Court:
This is an appeal from a summary judgment entered against Ford Motor Credit Company ("FMCC") and in favor of George Mathis ("Mathis") on April 20, 1992, in the Circuit Court of George County, Mississippi. The trial court held FMCC's sale of a truck repossessed from Mathis at a wholesale auction open only to dealers was not commercially reasonable under Miss. Code Ann. § 75-9-504. We reverse.

FACTS AND PROCEDURAL HISTORY
On May 22, 1987, George Mathis purchased a used 1984 Mazda B2000 pickup truck which he financed through Ford Motor Credit Company. Mathis signed a Retail Installment Sales Contract whereby he agreed to pay the sum of $4,039.59 over a period of 42 months. He subsequently defaulted on the agreement and voluntarily surrendered the truck to FMCC.
*1274 After recovering the truck, FMCC mailed to Mathis via certified mail a notice of repossession prior to sale. The lower court found the notice complied with Miss. Code Ann. §§ 75-9-504 and 75-9-507 in all respects. The truck was sold at the Mississippi Automobile Auction in Hattiesburg, Mississippi, for the sum of one thousand six hundred fifty dollars ($1,650.00), a sale price which was 137% above the National Automobile Dealers Association "Blue Book" wholesale value. After making all "credits, adjustments and offsets" there was a remaining balance of $2,427.29 owing on the contract.
Subsequently, FMCC filed a complaint in the Circuit Court of George County, Mississippi, for recovery of the vehicle's outstanding balance of $2,427.29 plus $364.09 in attorney's fees for a total of $2,791.38. The defendant, Mathis, filed an answer in which he alleged that he was entitled to damages for FMCC's failure to dispose of the repossessed truck in a commercially reasonable manner, and for its failure to sell the truck for its reasonable fair market value. The issues were eventually narrowed to whether the post-repossession sale of the truck at the Mississippi Auto Auction was a commercially reasonable sale as required under the Uniform Commercial Code, Miss. Code Ann. §§ 75-9-504 and 75-9-507.
FMCC filed a Motion for Summary Judgment on April 24, 1990. A hearing on the motion was held on July 6, 1990, before the Honorable Clinton E. Lockard. Judge Lockard denied the motion without prejudice subject to its being reconsidered upon the submission of additional affidavits. The additional affidavits were subsequently filed with the court and FMCC's Motion for Summary Judgment was again heard by the circuit court, the Honorable Darwin Maples presiding. An order was entered on November 21, 1990, denying FMCC's motion. An amended order was filed by Judge Maples on January 3, 1991, in which he set out his findings of fact and conclusions of law upon which he based his decision to deny FMCC's Motion for Summary Judgment.
FMCC was then granted leave to petition this Court for an interlocutory appeal. On March 1, 1991, this Court denied that Petition for Leave to File Interlocutory Appeal. The case was set for trial on three separate occasions. Finally, on April 20, 1992, Mathis filed a Motion for Summary Judgment. On that same date, the circuit court, the Honorable Kathy King Jackson presiding, entered a ruling that Mathis was entitled to summary judgment as a matter of law. In granting summary judgment, Judge Jackson adopted the findings of fact and conclusions of law made by Judge Maples in an earlier order.
During discovery, FMCC submitted affidavits from Gordon Illing, an employee of FMCC, Gary Sells, assistant general manager of Mississippi Auto Auction in Hattiesburg, Rickie Chatagnier, an employee of General Motors Acceptance Corporation in Biloxi, Mississippi, and Al Payne, an employee of Chrysler Credit Corporation in Mobile, Alabama. The facts given in these affidavits were undisputed by Mathis and were therefore accepted as true by the lower court.
The Mississippi Auto Auction, Inc. is a wholly owned subsidiary of Anglo-American Auto Auction, Inc. Anglo-American Auto Auction, Inc. has subsidiaries doing business throughout the United States. These auctions are only open to licensed automobile dealers who are able to meet certain financial and stability criteria.
The Hattiesburg auto auction attracts dealers from all 50 states. However, the sales area primarily targeted by the auction includes 15 states. Those states primarily targeted include all the states bordering Mississippi plus California, Indiana, Texas, Arizona and Missouri. Regularly scheduled auctions are held once a week. In addition, special sales are also held. Prior to a sale approximately 3,500 mail-outs are sent to dealers in the target area. Employees of the Hattiesburg auction also make approximately 300 telephone calls per week to publicize the sales. The auction also has two traveling representatives, each of whom call upon about 75 dealers per week. There is an average weekly attendance of 220 dealers bidding on cars at the Hattiesburg auction. Mississippi Auto Auction, Inc. sold approximately 24,000 cars in 1989. Anglo-American Auto Auction, Inc., through its collective subsidiaries, *1275 sells approximately 500,000 cars per year.
In his affidavit, Sells stated that approximately 100 Ford repossessions are sold each week at the Hattiesburg auto auction. The auction also handles "repossession sales for local banks, finance companies, rental companies and some dealer consignments." "Virtually every type of lending entity regularly engaged in financing automobiles uses an auto auction similar to the Hattiesburg Auto Auction."
NADA "Blue Book" wholesale values are determined by the prices bid by dealers at car auctions which are transmitted by computer to the NADA. Auto auctions are virtually the only method used by FMCC, General Motors Acceptance Corporation and Chrysler Credit Corporation for selling repossessed vehicles.
The lower court held that although the data regarding auto auctions was not in dispute, "as a matter of law, that such a sale, calculated to generate a wholesale price [as opposed to a retail price], is not a commercially reasonable sale as is required under Mississippi's adopted version of Article 9 of the Uniform Commercial Code." FMCC was held to have complied with all other requirements of Article 9 in regard to the repossession of Mathis' truck.

APPEAL
FMCC argues that the resale of a repossessed automobile through a dealers-only auto auction intended to generate a wholesale price is a commercially reasonable sale under the UCC and the provisions of Miss. Code Ann. Sections 75-9-504 and 75-9-507. § 75-9-504 reads in pertinent part:
(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one (1) or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable... .
The lower court held the repossession and sale of the truck financed by Mathis through FMCC was proper in all respects with the exception of the manner of the sale. The trial judge held that since the truck was sold at an auction open only to dealers and therefore calculated to generate a wholesale, not a retail, price, it was commercially unreasonable. The lower court found that the price obtained for Mathis' repossessed truck was 137% above the NADA "Bluebook" wholesale price. The lower court did not find the price obtained for the truck to be commercially unreasonable. It found instead that the sale was not commercially reasonable because the auction was intended only to bring a wholesale price. Because of the lower court's ruling, only the commercial reasonableness of the manner of sale will be addressed here. Commercial reasonableness is discussed in § 75-9-507 as follows:
(2) The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner... .
The wholesale disposition of repossessed collateral is commercially reasonable if it is "consistent with ordinary commercial practice among dealers." White & Summers, Uniform Commercial Code (3rd Ed. 1988 & Supp. 1994) § 27-11.
Comment 2 to § 9-507 of the U.C.C. reads:
One recognized method of disposing of repossessed collateral is for the secured party to sell the collateral to or through a dealer  a method which in the long run may realize better average returns since the secured party does not usually maintain his own facilities for making such sales. Such a method of sale, fairly conducted, is recognized as commercially reasonable *1276 under the second sentence of subsection (2).
The wholesale versus retail issue has not been previously addressed in Mississippi. The courts of several other states have dealt with this issue, however, and have as a general rule been unwilling to hold the sale of' repossessed vehicles at wholesale auction to be commercially unreasonable.
In a case with facts very similar to the case at bar, the Georgia Court of Appeals, in interpreting a statute identical to § 75-9-507(2), held:
Bank South has shown, by way of affidavit, that the collateral was disposed of at a private auction by a recognized automobile auction company according to standard practice and procedure for sales of this kind. Bank South has disposed of collateral in this manner on a weekly basis for 11 years... . Because McMillian has offered no evidence to the contrary, we agree the trial court correctly concluded that the method and manner of sale were commercially reasonable.
McMillian v. Bank South, N.A, 188 Ga. App. 355, 373 S.E.2d 61, 62 (1988). See also Lee v. Trust Company Bank, 204 Ga. App. 28, 418 S.E.2d 407, 408 (1992).
The Alabama Civil Court of Appeals has also held the wholesale auction of repossessed vehicles to be commercially reasonable. In Daniel v. Ford Motor Credit Co., 612 So.2d 483 (Ala. Civ. App. 1992), FMCC sold a repossessed automobile at a wholesale dealers' auction for a price less than the average wholesale price listed in the NADA appraisal guidebook. In finding the disposition to be commercially reasonable, the Alabama Court opined:
The testimony has indicated that the wholesale dealer auction is the usual manner of sale of repossessed automobiles and that it is in conformity with the reasonable commercial practices among dealers in repossessed automobiles, in accordance with § 7-9-507(2). In view of the evidence, of the requirements of the statute, and of the proper notice that was given, we cannot hold that the sale was commercially unreasonable.
Id. at 485.
In Gaynor v. Union Trust Co., 216 Conn. 458, 582 A.2d 190 (1990), the Connecticut Court held a bank's wholesale disposition of repossessed used cars to be commercially reasonable.
In Union National Bank of Wichita v. Schmitz, 18 Kan. App.2d 403, 853 P.2d 1180 (1993), the Kansas Court of Appeals refused to hold the disposition of repossessed collateral at a dealers-only wholesale auction to be per se commercially unreasonable. The Court opined:
It is well established that whether a particular disposition was done in a commercially reasonable manner is a question of fact to be determined by the trier of fact. The burden of proving that the collateral was disposed of in a commercially reasonable manner is placed upon the secured creditor... .
* * * * * *
The method utilized to dispose of the collateral in this case was a well-known, regularly scheduled, dealer-only wholesale auction. The trial court's findings that this sale was commercially unreasonable are so broad that they virtually declare any dealer-only wholesale auction to be not commercially reasonable. In deciding this issue, the trial court focused solely on the nature of the auction and the price received for the vehicle. The trial court's decision, if allowed to stand, would mean that a dealer-only wholesale auction could not be commercially reasonable. This is not the law, and the trial court erred in reaching this conclusion.
* * * * * *
We think it apparent from the decisions and the statutes cited that the mere fact collateral is sold at wholesale and not "exposed to the retail market" is not in and of itself sufficient to render a sale commercially unreasonable. The trial court in the *1277 instant matter erred in reaching this conclusion.
Id. 853 P.2d at 1184-6.
Like the Kansas Court, we find the lower court erred in its holding that the sale of repossessed vehicles at wholesale without first exposing them to the retail market is per se commercially unreasonable. When the factors of manner, method, time, place and terms of sale are considered, the disposition of repossessed property at a dealer-only wholesale auction may very well be commercially reasonable. This is a question for the finder of fact in a particular case. If the debtor challenges the commercial reasonableness of the disposition of his repossessed vehicle, the burden is on the creditor to show through the aggregate of circumstances that the sale met all the factors of commercial reasonableness. Schmitz, 853 P.2d at 1187. See also Northern Commercial Co. v. Cobb, 778 P.2d 205 (Alaska 1989); Villella Enterprises, Inc. v. Young, 108 N.M. 33, 766 P.2d 293 (1988).
We find that the trial court erred in granting summary judgment to Mathis and reverse and remand for a trial on the merits.

CROSS-APPEAL
Since we find the trial court erred in granting summary judgment to Mathis, both issues on cross-appeal are moot and, therefore, need not be addressed.

CONCLUSION
The trial court erred in holding that the sale of a repossessed vehicle at a dealers-only auction is per se commercially unreasonable. Both issues on cross-appeal are moot. For the foregoing reasons this case is reversed and remanded on direct appeal and cross-appeal is dismissed as moot.
ON DIRECT APPEAL: REVERSED AND REMANDED. ON CROSS-APPEAL: DISMISSED AS MOOT.
HAWKINS, C.J., PRATHER, P.J., SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
McRAE, J., dissents with separate written opinion.
McRAE, Justice, dissenting:
Since a "dealer-only" auction is essentially a private sale, I applaud the majority's recognition that the burden belongs on a creditor to demonstrate that the sale of repossessed property has been handled in a commercially reasonable manner. In this case, however, Ford Motor Credit Company has not met its burden. I would therefore affirm the summary judgment in Mathis's favor.
Although the majority acknowledges that manner, method, time, place, and terms of sale are factors to consider when determining the commercial reasonableness of the sale of repossessed property, it appears to take for granted the reasonableness of a sale based on wholesale, and not retail, price. Why? Because that is how everybody does it. Nothing, however, in our statutes or case law directs us to assume that repossessed property is properly sold in a dealers-only wholesale auction rather than a retail auction. To the contrary, in the analogous situation of a deficiency judgment in a real property foreclosure sale, determination of fair market value does not even contemplate a sale where the public is not in attendance and placing bids. Wansley v. First National Bank of Vicksburg, 566 So.2d 1218, 1224 (Miss. 1990); Haygood v. First National Bank of New Albany, 517 So.2d 553, 556 (Miss. 1987). While a lending institution, if it so chooses, may sell a vehicle in a private sale through a dealer, it is the dealer who sells the vehicle at retail to the public when the institution does not have the facilities to do so.
Obtaining a fair price for the repossessed property benefits both debtor and creditor. In this case, however, we are given no indication of what a "fair" price for Mathis's vehicle might have been. The NADA Blue Book provides both the wholesale and retail prices of vehicles, as well as the current loan value. That information was not made a part of the record. Instead, the majority relies only on the affidavit of a Ford Motor Credit Company employee, who stated that the sale of the vehicle for $1,650.00 represented 137% of its *1278 wholesale value. Further, Ford Motor Credit incurred $198.00 in transporting the vehicle to Hattiesburg for the sale. Might a "fairer" price have been achieved at a lower cost had the car been sold elsewhere?
I would affirm the trial court's decision since Ford Motor Credit Company failed to meet its burden of showing that Mathis's vehicle was sold in a commercially reasonable manner. To the contrary, the creditor proved only that it utilized a closed (private) sale and sold the vehicle for a wholesale price after incurring the unwarranted expense of transporting it outside of the area where it was financed and housed. I do agree with the majority only to the extent that it correctly places the burden of demonstrating reasonableness on the creditor.