# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FORD MOTOR CREDIT d/b/a PRIMUS FINANCIAL SERVICES, | No. 44773-8-II |
| Respondent, | |
| v. | |
| RAYMOND BRENNEMAN and VALERIE BRENNEMAN, husband and wife, and their marital community composed thereof, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Raymond and Valerie Brenneman appeal the trial court's order granting summary judgment to Ford Motor Credit and awarding Ford a deficiency judgment for the balance due under its motor vehicle retail installment contract with the Brennemans. The Brennemans contend that there are material issues of fact concerning whether Ford's sale of their repossessed vehicle was commercially reasonable and whether Ford provided proper notice of that sale. Because no genuine issues of material fact exist, we affirm.

## FACTS

The Brennemans bought a 2004 Volvo automobile from Barrier Volvo on December 6, 2007. In connection with this purchase, the Brennemans signed a retail installment contract that set forth the terms of the purchase and the installment payments they agreed to make. Ford is the creditor with respect to the Brennemans' loan.

The Brennemans assert that they took the car back to Barrier for warranty repair of its transmission in the fall of 2008. The Brennemans also claim that after a month-long delay, Barrier informed them that a replacement transmission was on back order. The Brennemans grew tired of waiting and surrendered possession of the car to Barrier. They believed that by surrendering possession and foregoing a lemon law claim, they satisfied their obligations under the retail installment contract. Ford repossessed the car on November 3, 2008, and sent the Brennemans a notice of its plan to sell the vehicle on November 5, 2008.

Ford arranged for the car to be sold at auction by Manheim Seattle, which conducts weekly vehicle auctions in Washington and other states. The car sold for $13,000, leaving a balance of more than $10,000 due on the Brennemans' retail installment contract. Ford mailed a statement of sale to the Brennemans that set forth those figures and the deficiency they owed.

When the Brennemans did not pay the deficiency, Ford sued to recover the monies due under the retail installment contract. The Brennemans responded by raising several defenses, including claims that Ford's action was barred by its failure to give proper notice of the sale and that the sale was not commercially reasonable under the Uniform Commercial Code.

Ford moved for summary judgment and provided documents showing that it mailed the notice of its plan to sell the car, as well as the statement of sale, to the address on the Brennemans' vehicle registration. Ford added that the car was sold "as is" to the highest bidder, and that the sale "was through an experienced dealer in a recognized market in a commercially reasonable manner." Clerk's Papers (CP) at 33. Ford also provided a certification from its business records custodian stating that it had demanded payment on the contract and that the Brennemans had refused or been unable to pay.

The Brennemans responded that they did not receive notice of the sale because it was sent to an address where they had resided "in the past" rather than their current mailing address, which is the address included in their contract with Ford. CP at 49. They also asserted that their surrender of the car to the dealer satisfied their contract obligations with Ford.

During the hearing on Ford's motion, the Brennemans acknowledged that nothing in the contract or the law stated that surrender of the car would take care of any outstanding contractual obligations. Nor could they cite any law stating that a car's defect allows an owner to void a related sales contract. The trial court granted Ford summary judgment on the issue of the Brennemans' liability, but it requested additional briefing concerning the car's value and the appropriate judgment amount.

The Brennemans then moved for reconsideration and asserted that issues of fact remained as to whether they had actually defaulted on the contract, whether Ford's sale of the car was commercially reasonable, and whether they had adequate notice of the sale. They argued that their car payments were timely until they surrendered possession, and that they never received a notice of default. They also maintained that the car's inoperative transmission had to be fixed to make Ford's sale of the car commercially reasonable, and that the vehicle registration form that Ford submitted was not authentic.

In a separate memorandum addressing the car's value, the Brennemans contended that the value at the time of sale, based on the current "Blue Book"[1] figure, was approximately

---

[1] The Brennemans' memorandum cites to both the Kelley Blue Book and the National Automobile Dealer Association (NADA) valuations. We refer to the average of these valuations as the "Blue Book" for ease of reference.

$23,000. CP at 76, 77. They asserted in the alternative that the car was defective and had no retail commercial value.

Ford's response concerning the car's value attached the auctioneer's condition report stating that the vehicle was drivable and that its overall condition was average at the time of sale. The report also showed that the car was valued at $10,650 before the auction. Ford argued that the car was not defective and not without value.

In response to the Brennemans' motion for reconsideration, Ford again asserted that it had shown the car was operable at the time of default and that the Brennemans had provided no competent evidence to support their claim to the contrary. Ford also argued that it had shown, with the certification from its business records custodian, that the Brennemans were in default. Ford added that the vehicle registration it had submitted was valid but argued that even if its notice of the sale was insufficient, the Brennemans had not disclosed any resulting loss.

The trial court denied the Brennemans' motion for reconsideration and concluded that the value of the car was established by the commercially reasonable sale. The court ultimately entered a judgment of $14,389.07 in Ford's favor.

On appeal, the Brennemans argue that material issues of fact remain on the issues of commercial reasonableness and notice that preclude summary judgment and the entry of a deficiency judgment against them.

ANALYSIS

1. STANDARD OF REVIEW

When reviewing a summary judgment order, we engage in the same inquiry as the trial court, on the same record. *Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 377, 972 P.2d 475 (1999). A summary judgment order can be granted only if the pleadings, affidavits, depositions, and admissions on file show the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. *Marshall*, 94 Wn. App. at 377. The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Wojcik v. Chrysler Corp.*, 50 Wn. App. 849, 854, 751 P.2d 854 (1988). The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 198, 943 P.2d 286 (1997).

After the moving party has submitted adequate affidavits, the nonmoving party must set forth specific facts rebutting the moving party's contentions and disclosing the existence of issues of material fact. *Marshall*, 94 Wn. App. at 377. A nonmoving party may not rely on speculation or on argumentative assertions that unresolved factual issues remain. *White v. State*, 131 Wn.2d 1, 9, 929 P.2d 396 (1997). Although CR 56(e) requires an affidavit submitted in a summary judgment proceeding to be based on personal knowledge, to set forth admissible evidentiary facts, and to show that the affiant is competent to testify as to his averments, courts generally will indulge in some leniency with respect to affidavits presented by the nonmovant. *Pub. Util. Dist. No. 1 of Lewis County. v. Wash. Pub. Power Supply Sys. (WPPSS)*, 104 Wn.2d

353, 360-61, 705 P.2d 1195, 713 P.2d 1109 (1985). Such leniency does not extend, however, to affidavits containing inadmissible evidence or conclusory statements. *WPPSS*, 104 Wn.2d at 361.

In responding to Ford's motion for summary judgment, the Brennemans submitted an unsworn affidavit that was not signed under penalty of perjury. *See* GR 13 (unsworn affidavit is permitted if signed under penalty of perjury). The Brennemans attached an identical declaration that was signed under penalty of perjury to their reply to Ford's response to their motion for reconsideration. We will consider these filings in determining whether issues of fact remain concerning the commercial reasonableness of the sale or Ford's notice thereof.

2. COMMERCIAL REASONABLENESS

The Uniform Commercial Code requires a creditor to dispose of a defaulting debtor's collateral in a "commercially reasonable" manner. RCW 62A.9A-610(b); *Sec. State Bank v. Burk*, 100 Wn. App. 94, 95, 995 P.2d 1272 (2000). The fact that a greater amount could have been obtained by a disposition at a different time or in a different method from that selected is not alone sufficient to preclude the creditor from establishing that the disposition was made in a commercially reasonable manner. RCW 62A.9A-627(a). A disposition of collateral is commercially reasonable if it is made in the usual manner in any recognized market, at the price current in any recognized market at the time of the disposition, or is otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition. RCW 62A.9A-627(b). In sum, the commercial reasonableness of a sale depends on the procedures employed and not on the proceeds generated. *Leasing Serv. Corp. v.*

*Diamond Timber, Inc.*, 559 F. Supp. 972, 979 (S.D.N.Y. 1983) (citing *Foster v. Knutson*, 84 Wn.2d 538, 527 P.2d 1108 (1974)), *aff'd*, 729 F.2d 1442 (2d Cir. 1983).

"'The burden of proving commercial reasonableness is on the creditor, who is in the better position to know and control the nature of resale, and is the one asserting the deficiency judgment.'" *Sec. State Bank*, 100 Wn. App. at 101 (quoting *Rotta v. Early Indus. Corp.*, 47 Wn. App. 21, 24, 733 P.2d 576, *review denied*, 109 Wn.2d 1012 (1987)). When the propriety of the secured party's disposition of collateral is contested, the issue of commercial reasonableness should be determined as a matter of law only in the clearest of cases. *Sec. State Bank*, 100 Wn. App. at 101.

In arguing that its sale was commercially reasonable, Ford pointed out that the Brennemans signed a contract stating that Ford could repossess and sell the car if they violated their obligations thereunder. Ford placed the car with an experienced auctioneer, and information about the car was available online before the sale. The car was sold "as is" to the highest bidder. CP at 33.

The Brennemans responded that Ford had to replace the car's defective transmission before selling it because the duty to recondition collateral is an essential component of commercial reasonableness. To support this argument on appeal, they cite authority providing that if the cost of preparing the collateral for sale is small in comparison to the additional price it may generate, the creditor should spend the extra money. *Westgate State Bank v. Clark*, 231 Kan. 81, 92, 642 P.2d 961, 970 (1982); *see also Union Nat'l Bank of Wichita v. Schmitz*, 18 Kan. App. 2d 403, 405, 412, 853 P.2d 1180, 1182, 1187 (1993) (sale of car in "fair to poor shape" was commercially reasonable where creditor spent $15 to have it washed and vacuumed). As the

*Westgate* court explained, "[W]ashing and cleaning up consumer goods or equipment may be the only commercially reasonable thing to do in order to generate bidder interest at the sale." *Westgate State Bank*, 642 P.2d at 970. These cases do not support the argument that Ford had to recondition the car before its sale at auction.

The Brennemans' argument regarding the impact of the defective transmission on the issue of commercial reasonableness is also unavailing because it depends largely on hearsay statements from the unnamed mechanic who allegedly inspected their car. As Ford asserts, the Brennemans presented no competent evidence to support their assertion that their vehicle was defective. They attach to their appellate brief a notice of a class action settlement reached with Volvo concerning failing transmissions, but that document was not before the trial court and may not be considered on appeal. *Riojas v. Grant County Pub. Util. Dist.*, 117 Wn. App. 694, 696 n.1, 72 P.3d 1093 (2003), *review denied*, 151 Wn.2d 1006 (2004); RAP 9.12.

Furthermore, the Brennemans' statements regarding the car's condition at the time of sale are speculative because they do not know whether the transmission, even if defective, was in fact replaced before the car was sold. Moreover, the Brennemans assert contradictory positions—that the car was worth the Blue Book figure for a car in excellent condition and that the car had no retail commercial value.[2] By contrast, Ford submitted documentation addressing the car's

---

[2] Ford complains for the first time on appeal that Blue Book documents attached to the Brennemans' memorandum were not properly authenticated under ER 901. The Brennemans respond that these documents are from self-authenticating periodicals and that this court has determined that the Blue Book figure is convincing evidence of value. ER 902(f); *McChord Credit Union v. Parrish*, 61 Wn. App. 8, 15, 809 P.2d 759 (1991). Even if these documents are properly before us, they do not create an issue of fact. In *McChord Credit Union*, the Blue Book value was $1000 greater than the sale price, and the court found no reason for the discrepancy

condition at the time of sale. Thus, the Brennemans' conflicting and speculative assertions, based largely on hearsay, fail to create a question of fact on the issue of commercial reasonableness.

3. NOTICE

The Brennemans argue that there are issues of material fact regarding whether Ford complied with the Uniform Commercial Code in providing proper notice of their default, Ford's acceleration of the underlying debt, and the intended sale of their vehicle.[3]

The Uniform Commercial Code requires a creditor that disposes of repossessed collateral to send notification of the planned disposition to the debtor. RCW 62A.9A-611(b); *Rotta*, 47 Wn. App. at 24. A person gives notification to another "by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it." Former 62A.1-201(26) (2011) (recodified as RCW 62A.1-202(3)(d) by Laws of 2012, ch. 214, § 110). Consequently, notice may be effective even though it is not received if the creditor acted reasonably in trying to send notice. 27 MARJORIE D. ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES—DEBTORS' RELIEF, § 3.126 at 273 (1998). The Uniform Commercial Code defines "send" as follows:

---

based on the description of the car in the record. 61 Wn. App. at 15. The Brennemans' assertion that their car was worth the Blue Book value is entirely speculative.

[3] As support, the Brennemans cite U.C.C. § 9-504 and RCW 62A.9A.611. U.C.C. § 9-504 addresses the description of collateral that a financing statement should provide and is not pertinent here. RCW 62A.9A.611 addresses the notice of disposition requirements and is discussed above. The Brennemans cite no authority to support their argument that the Uniform Commercial Code required Ford to provide separate notice of their default or its acceleration of the debt, so we do not address these claims of error. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Boseley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

> "Send" in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances.

Former RCW 62A.1-201(38) (2011).

When the Brennemans argued that they never received notice of Ford's plan to sell the vehicle at public auction, Ford provided a copy of the notification showing that it was sent to them at the address listed on the vehicle registration. The Brennemans asserted that while they had lived at that address "in the past," they were living at a different address at the time of the notification. CP at 49. On appeal, they refer to their argument that the registration form was fraudulent, but they have provided no facts to support their claim of fraud and no explanation as to how a former address was included in their vehicle registration if they did not provide it themselves.

Ford persuasively argues that it was reasonable to send the notification to the address listed on the vehicle registration and that, as stated above, actual receipt of notification is not required if it acted reasonably in trying to send notice. Ford also argues that even if its notice was deficient, the remedy is limited to the Brennemans' loss resulting from the deficiency. *McChord Credit Union v. Parrish*, 61 Wn. App. 8, 14, 809 P.2d 759 (1991). The Brennemans claimed no such loss below.

The Brennemans contend for the first time on appeal that with proper notification, they could have exercised their right of redemption or ensured that the faulty transmission was replaced so that a higher resale price could be obtained. This contention seems highly speculative given their belief that surrender of the car satisfied their contractual obligations. But,

even if such steps were likely, we may not consider this untimely assertion in reviewing the trial court's decision. *Hanson Indus., Inc. v. Kutschkau*, 158 Wn. App. 278, 290, 239 P.3d 367 (2010), *review denied*, 171 Wn.2d 1011 (2011).

We conclude that there are no issues of material fact concerning Ford's compliance with the Uniform Commercial Code in notifying the Brennemans about the intended sale of the vehicle. Consequently, we need not address the Brennemans' argument, again raised for the first time on appeal, concerning Ford's failure to obtain a timely appraisal of the vehicle. *See McChord Credit Union*, 61 Wn. App. at 14 (creditor that violates the Uniform Commercial Code faces a rebuttable presumption that the value of the collateral at or near the time of repossession is at least equal to the amount of the outstanding debt).

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Hunt, J.

_____
Bjorgen, A.C.J.